## GRAY v. PHILLIPS.

1. Where the parties to a parol contract enter into a writing, such as a bond executed by the one to the other, based upon the terms of the contract, the writing will be taken as conforming to their real agreement, and where no fraud or mistake is alleged and there is no application to reform the writing, it will be enforced in an action founded upon it, according to the intention of the parties as therein expressed.

2. Where one becomes surety for another upon the faith of a parol undertaking by the latter to deposit collaterals with her attorney, who is the son of the surety, the object of the deposit being to indemnify the surety against loss, a bond afterwards given by him to his principal obligating himself to restore the collaterals after the hazard of loss has terminated is not without consideration; nor will the fact that the son and agent of the surety was also the principal's attorney, through whom the arrangement with the surety was negotiated, relieve the surety from his liability on the bond, although the collaterals may have been wrongfully converted by the son and agent to his own use without the knowledge or consent of the surety.

3. In an action upon the bond, the declarations of the son and agent made to his father are not admissible in behalf of the latter to prove that the collaterals had been restored in pursuance of the undertaking in the bond.

4. The evidence warranted the verdict.

5. A motion for a new trial being based upon several grounds distinctly set forth therein, an assignment of error in the bill of exceptions that the court erred in overruling the motion, is sufficiently plain and specific in setting forth the errors complained of, under the act of November 11th, 1889, which prescribes the manner of taking cases to the Supreme Court.　　　*Judgment affirmed.*

December 28, 1891.

Contracts. Principal and surety. Consideration. Evidence. Verdict. Practice. Before Judge MILNER. Gordon superior court. February term, 1891.

The declaration of Mrs. Phillips, formerly Mrs. Winn, alleged: On February 3, 1881, Z. T. Gray executed to her a bond for $1,200, the condition of which was as follows: She had conveyed to him a house and lot in Atlanta, the furniture contained therein, and an Atlanta city bond for $500, as an indemnity against loss upon a

bond signed by him as security and by her as principal on January 28, 1881; and should he release and quit-claim to her the premises and furniture, and redeliver the city bond, upon the release of said bond without loss to him, then this bond should be void, otherwise of force. She further alleged that after Gray had signed the bond on November 19, 1886, he was fully released and discharged from the bond signed by her and by him as security, without any loss or damage sustained by him; that on the day he was released, and at other times, she demanded of him the redelivery and quit-claim of the realty and furniture, and a redelivery of the city bond, upon which there was interest at eight per cent. uncollected from February 3, 1881, to the time of the filing of the declaration, which bond when deposited with Gray was worth twenty dollars premium per hundred, which Gray refused to deliver and still refuses, etc.

Gray pleaded not indebted; that he had fully complied with the obligations of the bond sued upon; that on May 18, 1881, the firm of J. W. Phillips & Company compounded with their creditors, with the exception of the Dibble Hardware Company to whom they owed about $1,200; that in consideration of this settlement the superior court of Fulton county ordered the receiver of Phillips & Company to pay over to Phillips all the assets in his hands belonging to the firm, except an amount retained to cover the claim of the Dibble Hardware Company; that immediately upon the settlement by Phillips & Company and the partial release of this defendant upon the bond mentioned in the declaration, J. A. Gray, who held and had entire charge of the deed from plaintiff to defendant, the bill of sale of the furniture and the city bond, as attorney for plaintiff and agent for defendant, delivered the bond and bill of sale as defendant was obligated to do; that Phillips and plaintiff desiring an entire release of the bond, so that the prop-

erty held by defendant could be reconveyed, J. A. Gray, at the instance of plaintiff and Phillips, applied to the court for a reduction of the bond, which application was refused; that thereupon it was agreed that said bond should remain as it was with only the real estate collateral until the settlement could be effected with the Dibble Hardware Company, which was done on November 19, 1886, when defendant signed and delivered to J. A. Gray, who in turn delivered to plaintiff, a quit-claim deed to the property previously conveyed by her to him; that defendant did not during the transaction have in his possession or see the bill of sale, the city bond or the deed; and that the entire matter was managed by his agent, J. A. Gray, who was the attorney of plaintiff and of Phillips & Company.

The jury found for plaintiff $800 principal. Defendant's motion for new trial was overruled, and he excepted. In addition to the grounds of the motion that the verdict was contrary to law, evidence, etc., it was alleged therein that the court erred in refusing to charge: "If you find from the evidence that James A. Gray was the attorney of plaintiff in inducing defendant to sign her bond as surety, and to obtain his signature to the bond told him he was authorized by his client to pledge certain securities, among them the bond now in question, and that if he would sign the bond these securities would be left with him, James A. Gray, to be kept by him for defendant's security, and if acting upon these assurances defendant signed the bond, and the securities were so left with said James A. Gray and were afterwards by him in any way converted, the defendant would not be liable for the conversion unless he knew of the conversion and aided therein, or it was done by his consent or knowledge." It was alleged that the court gave no charge at all as to the mutual relation which J. A. Gray sustained to the parties, but treated him in his charge, so far as

the custody of the bond was concerned, as the agent of plaintiff alone.

Also, that the court erred in excluding the following evidence of defendant: In the spring or summer of 1881, I met J. A. Gray and asked him about the way the case was progressing between Mrs. Winn and the creditors of Phillips, and he told me that it was all settled but one claim of about twelve hundred dollars, and that he had surrendered all the securities except the deed to the land, as this would secure me in what was behind.

The evidence showed: J. W. Phillips & Company, being indebted to plaintiff, made her a mortgage and bill of sale which were drawn by a law firm of which J. A. Gray was a member. Afterwards the creditors of Phillips & Company filed a bill attacking the sale, and a receiver was appointed; to release the goods from the possession of the receiver plaintiff got J. A. Gray, who represented her and Phillips & Company in the litigation, to get up a bond, and in pursuance of this authority J. A. Gray got his father, the defendant, to sign such a bond as surety. Plaintiff authorized J. A. Gray to say to the person who would sign the bond that she would convey her house and lot, her furniture and the city bond, and let J. A. Gray have supervision over the store, and J. A. Gray so informed his father and told his father he would see that his father was protected, as the business would be in his (J. A's) hands, and that he was authorized by plaintiff to say so, and that his father would be in no danger. On these terms defendant agreed to go on the bond and did so, and the deed to the realty, bill of sale to the furniture and the city bond were turned over to J. A. Gray. The defendant never had possession of either the deed, bill of sale, or city bond. The business of Phillips & Company was, until the 13th of May thereafter, conducted by one Mead, J. A. Gray advising that J. W. Phillips have nothing to do with it until he

effected a settlement with his creditors. In the agreement J. A. Gray was to have supervision of the store, and the money was every day to be brought to him, and he deposited it in the bank subject to the check of plaintiff when countersigned by him, and in no other way; and this was always done up to the partial settlement made with the creditors of Phillips & Company, which was about the 13th of May following. J. A. Gray then countersigned a check to draw out the balance for her, and gave the entire charge of the store to her, who took possession and placed J. W. Phillips in charge as her manager. The bill filed by the creditors continued pending until 1886 or 1887, and finally Phillips effected an arrangement with the hardware company. The creditors of Phillips & Company have been settled with, and a reconveyance of the realty and furniture made; but as to whether the city bond had been turned over to the plaintiff the evidence was conflicting.

R. J. & J. McCAMY and E. J. KIKER, for plaintiff in error.

McCUTCHEN & SHUMATE and W. J. CANTRELL & SON, contra.