20072. CITY OF EAST POINT *v.* CHRISTIAN.

Decided December 10, 1929.

E. E. *Phillips,* W. B. *Knight,* for plaintiff in error.
H. W. *McLarty, Charles* G. *Bruce,* contra.

Luke, J. W. H. Christian brought an action for damages against the City of East Point for injuries alleged to have been sustained by his wife by reason of her stepping on an old flattened galvanized bucket covering a water-meter of said city and having her right foot and leg precipitated in the hole containing the meter.

The first question for consideration is the motion to dismiss the writ of error. After the original motion had been filed, another motion to dismiss was made because the copy of the bill of exceptions served on the defendant in error was different from the original. The original bill of exceptions, certified by the clerk of the trial court, and having an acknowledgment of service thereon, imports absolute verity, and can not be contradicted by aliunde proof. *Ga. Fla. & Ala. Ry. Co.* v. *Lasseter,* 122 *Ga.* 679, 684 (51 S. E. 15).

The original motion to dismiss the writ contains four grounds, the first of which is that "the purported bill of exceptions is not directed or addressed to any court of this State." The bill of exceptions recites that the case came on to be heard on May 6, 1929, before Judge E. D. Thomas during the regular term of the superior court of Fulton county, and contains the usual request that the bill of exceptions be signed and certified "in order that said case may be considered by the Court of Appeals of Georgia," etc. Clearly there is no merit in this ground of the motion to dismiss.

The second ground of the motion to dismiss is that there is no valid exception to the judgment overruling the motion for a new trial. The exception is in this language: "To which judgment so overruling said motion, the said defendant then and there excepted, and now excepts, and assigns said ruling and judgment of the court as error as being contrary to law, and says that said judge should have granted said motion upon each and all of the grounds therein taken and set out." In *Gray* v. *Phillips,* 88 *Ga.* 199 (5) (14 S. E. 205), this rule is laid down: "A motion for a new trial being based upon several grounds distinctly set forth therein, an assignment of error in the bill of exceptions that the court erred in overruling the motion is sufficiently plain and specific in setting forth the errors complained of, under the act of November 11, 1889, which prescribes the manner of taking cases to the Supreme Court." See also *Holmes* v. *Pope,* 1 *Ga. App.* 338, 340 (58 S. E. 281); *Crouch* v. *Spooner,* 8 *Ga. App.* 626 (69 S. E. 1129). Rules of the Court of Appeals, Civil Code (1910), § 6332. Clearly the assignment of error was sufficient.

The third ground of the motion to dismiss is that the judge certifies that the bill of exceptions "contains" all of the evidence, when, as a matter of fact, it contains none. The certificate is that the bill of exceptions "is true, and contains all of the evidence and specifies all of the record material to a clear understanding of the errors complained of, etc." True, the bill of exceptions "contains" no evidence, but it does specify a brief of evidence duly approved by the judge and made a part of the record, and this suffices. See *Flanagan* v. *Scott,* 102 *Ga.* 399 (3) (31 S. E. 23).

The fourth and last ground of the motion to dismiss the writ is that "said bill of exceptions neither contains nor specifies any approved charge of the court." The bill of exceptions does specify

the charge of the court, and this charge is set out fully in the approved transcript of the record. Furthermore, "that the bill of exceptions fails to specify all the material parts of the record is no cause for dismissing the writ of error." *Atlanta Suburban Land Cor.* v. *Austin,* 122 *Ga.* 374 (50 S. E. 124).

Special ground 1 of the motion for a new trial is that the court erred in allowing in evidence the notice to the municipality of the claim for damages, for the reason that it was incomplete in failing to apprise the defendant of claims "for companionship, and the loss of society, for different items of doctor's bills, and things of that sort," not set out in the original petition, but pleaded by amendment. The notice is in the language of the original petition, and states the "time, place, and extent of such injury, and the negligence which caused the same." It is unnecessarily full and specific, and this special ground is not good. See Political Code (1910), § 910. See also *Maryon* v. *Atlanta,* 149 *Ga.* 35, 36 (99 S. E. 116), which quotes with approval from *Langley* v. *Augusta,* 118 *Ga.* 590 (11), 600 (45 S. E. 486, 98 Am. St. R. 133), as follows: "This act does not contemplate that the notice shall be drawn with all the technical niceties necessary in framing a declaration. The purpose of the law was simply to give to the municipality notice that the citizen or property owner has a grievance against it. It is necessary only that the city shall be put on notice of the general character of the complaint, and, in a general way, of the time, place, and extent of the injury. The act recognizes by the use of the words 'as near as practicable' that absolute exactness need not be had. A substantial compliance with the act is all that is required; and when the notice describes the time, place, and extent of the injury with reasonable certainty, it will be sufficient." In the present case the notice was drawn "with all the technical niceties necessary in framing a declaration."

Special ground 2 complains of the admission in evidence, over the objection of the defendant, of the following "question and answer:" Q. "Have you anticipated an operation for her?" A. "Yes, sir." The question was propounded to and answered by the plaintiff on cross-examination. The objection was: "We object to what he is anticipating; it is speculative." Mrs. Christian subsequently testified, without objection: "I have been advised by my doctor that I would have to be operated on, and I believe that is

what I will have to do in order to get well." One of the doctors who treated Mrs. Christian testified, without objection: "In my opinion, her condition can not be restored to normal without an operation." In *Bryant* v. *Sovereign Camp Woodmen of the World,* 29 *Ga. App.* 359, 361 (2 *c*) (115 S. E. 285), it was held: "Whether the court erred in allowing a particular witness to testify about certain facts over objection is immaterial where the same facts were shown by other evidence to which no objection was made." See also *Copeland* v. *Ruff,* 20 *Ga. App.* 217 (92 S. E. 955); *L. & N. R. Co.* v. *Lovelace,* 26 *Ga. App.* 286 (3) (106 S. E. 6); *Bullard* v. *Metropolitan Life Ins. Co.,* 31 *Ga. App.* 641 (6) (122 S. E. 75); *Savannah Electric Co.* v. *Crawford,* 130 *Ga.* 421 (4) (60 S. E. 1056).

In special ground 3 the plaintiff in error "contends that its rights were prejudiced by the ruling of the court on a question propounded to plaintiff by counsel for defendant on cross-examination." The question is: "Was this shortage paid off by the bonding company?" On his own motion, the judge ruled out the answer, in this language: "There would be higher and better evidence than that if it was." What "shortage" was referred to, and whether the anticipated answer had any proper bearing upon the case at bar, does not clearly appear from the exception. In short, this court can not intelligently pass upon the exception without reference to the very voluminous brief of evidence, and this it is not required to do. See *Russ* v. *State,* 35 *Ga. App.* 476 (133 S. E. 748); *Nissenbaum* v. *State,* 38 *Ga. App.* 253 (2) (143 S. E. 776).

Ground 4 is that after permitting the plaintiff to testify that he had been dealing with a named attorney, the judge declined to allow the witness on cross-examination to state "what was the nature of these dealings." Upon his own motion the judge rejected the evidence upon the ground that it was irrelevant. This exception might be disposed of by simply stating that the answer expected is not stated, and that the ground is too incomplete to be considered. However, it does appear that the "dealings" relate to an entirely different matter from the case at bar; and we therefore hold that the ruling was correct.

Ground 5 complains of the ruling of the court and the "manner in which it was made," when, on cross-examination, the defendant's

counsel asked the plaintiff the following question: "Why did he ask her to come to the office?" The court said: "Don't answer that question." The expected answer is not set out, and the exception can not be determined without reference to the brief of evidence. Clearly there is no merit in the contention that the court's ruling is erroneous "because it intimated an opinion as to the bona fides of the efforts of counsel for defendant in the eyes of the jury, and minimized the importance of defendant's counsel and defendant's contentions so as to prejudice the jury against the defendant."

Ground 6 complains of the court's refusal to grant a nonsuit. The well-seasoned rule is thus stated in *Swope* v. *McKinney*, 36 *Ga. App.* 168 (136 S. E. 89), in this language: "An exception to the refusal to grant a nonsuit will not be considered, where a verdict for the plaintiff is complained of as not supported by the evidence."

Ground 7 complains of the following excerpt from the charge of the court: "This suit is placed by the plaintiff upon the alleged negligence of the defendant; that is to say, the plaintiff's wife claims that she was injured, and injured by the negligence of the defendant; and in her petition she specifies the particulars in which she was injured." The objection to the charge is that it led the jury to believe that the wife of the plaintiff was the real plaintiff in the case. The petition was before the jury, the evidence had been submitted to them, and the judge had stated to the jury in his charge who was the real plaintiff in the case. The jury could not have been confused as alleged, and there is no merit in this ground.

Ground 8 complains of this charge: "The care required of both the plaintiff's wife and the defendant must be in proportion to the danger to be avoided and consequences that might reasonably be anticipated to grow from such neglect." The criticism is that the words "such neglect" can only refer to the "danger to be avoided," and that the charge is contrary to law and confusing. Let the foregoing excerpt be read in connection with its context. After defining ordinary care, the judge charged: "Ordinary care is a relative term, and what it is depends upon the circumstances of the case. That is to say, that the same act under one set of circumstances might be considered prudent but under different circumstances might amount to negligence. For negligence is the failure, as I said, to exercise ordinary care." The foregoing immediately pre-

cedes the excerpt complained of. The next quoted sentence follows that excerpt: "With this definition, it becomes a question of fact for you to say whether the defendant exercised ordinary care in so far as the particulars are concerned."

We are quite sure that the excerpt complained of, read in connection with its context, neither confused the jury nor injured the city. Furthermore, the exception states that "with the exception of the word 'such' this charge was requested by defendant city." This ground of the motion is without merit.

Ground 9 complains of this charge: "If the city has knowledge that a dangerous defect or hole exists in the street or sidewalk, it is its duty to exercise ordinary care in placing about this hole or defect safeguard for the protection of the public." The criticism is that the law does not require that any safeguard be put around a hole or defect in a street or sidewalk, but only requires "that the defect or hole be repaired or filled up,—in short, requires that the dangerous place be done away with." The general rule, as laid down in *Idlett* v. *Atlanta*, 123 *Ga.* 821 (51 S. E. 709), is: "It is the duty of a municipal corporation to keep its streets and sidewalks in a reasonably safe condition so that persons can pass along them in the ordinary methods of travel in safety." Of course, a dangerous place in a street or sidewalk must be safeguarded in some appropriate way until it can be fixed. See, in this connection, *Herrington* v. *Macon*, 125 *Ga.* 58 (4) (54 S. E. 71); *Holliday* v. *Athens*, 10 *Ga. App.* 709 (2) (74 S. E. 67). The charge is supported by the pleading, the facts, and the law, and is not erroneous.

Ground 10 raises the same question as ground 9, and is without merit.

Ground 11 complains of this charge: "It was the duty of the defendant in this case to take such precautionary measures for the protection of the plaintiff and others having a right to use said street and sidewalk as ordinary care and prudence would dictate, if you find that it had actual knowledge of the existence of the unprotected hole in the sidewalk." This excerpt is said to be erroneous because it "dealt with the hole as an unprotected hole, and made this impression on the jury, which was improper and contrary to law, and which charged facts and not law to the jury."

The superintendent of the water and light department of the city testified that on February 17, 1927, he inspected the water-

meter in question and "it was not covered with anything; . . it was open;" that he covered the hole with a piece of sheet-iron because he did not have the regular cover and could not get one for several weeks; and that said sheet-iron would have been sufficient "if there had not been outside interference." Mrs. Christian stepped in the hole at about noon on March 4, 1927. S. M. Hearn testified that the regular covering for the meter was broken by a truck; that he covered the hole with a plank, which remained there until February 15, 1927; and that a few days later he "saw a piece of galvanized bucket on there," with nothing on top of the bucket. Myrick Hearn testified for the defendant that finding that the plank over the meter had been broken by a truck, he covered it with a piece of tin, "an old broken bucket with the bottom out," and that "in about two or three days she came along and stepped in it." This witness testified that "the piece of tin . . was on this water-meter when she stepped there." Under the evidence for both the plaintiff and the defendant, it was not reversible error for the court to refer to the hole as "unprotected."

Ground 12 complains of this charge: "Just what precautions it should have taken; just what warning it should have given, and what character of obstruction or warning should have been adopted, is a question of fact for you to determine." The criticism is this: "Movant contends that this instruction was contrary to law and stated an incorrect rule of law, because movant contends the law does not impose on it any duty to put any warning, sign, or signal about holes and defects in its streets, but simply puts a duty on it to repair its streets and sidewalks and keep them in a reasonably safe condition for travel in the ordinary mode." It appears from the testimony of the superintendent of waterworks and other witnesses that nothing was put around the hole and no warnings were placed near it. Paragraph 6 of the petition "shows that there were no signs or warnings placed around said water-meter, . . and nothing to warn the pedestrian public." The charge was a concrete application of the law to the facts of the case and was not error.

Ground 13, complaining that the judge in his charge used the words "unprotected hole" is controlled adversely to the contention of plaintiff in error by our ruling on ground 11.

Ground 14 complains that the following excerpt from the charge is error because it assumes that plaintiff's wife had been injured:

"The only negligence, if there was such negligence, that would be considered by you would be such negligence as you may believe from the evidence to have been the proximate cause of the injury to the plaintiff's wife in the case." The court instructed the jury that the defendant denied that Mrs. Christian had been injured as alleged, and charged as to the burden of proof resting upon plaintiff to make out his case, and there was abundant evidence that the lady had been injured. In the light of the entire charge and the evidence, this excerpt will not work a reversal for the reason assigned.

Ground 15 complains of the following charge: "He also says that it will be necessary to have an operation performed on his wife, to treat the injury she received on this occasion, or to cure the injury she received on this occasion. On this item, as I said before, you would look to the character of her injury, whether she has suffered from any injury she received on this occasion, whether it is necessary that an operation be performed, what would be a reasonable charge incident to said operation." The foregoing charge is criticised as permitting the husband to recover for the "pain and suffering" of his wife. The subject-matter of the charge is "what would be a reasonable charge incident to said operation," and it is most improbable that the jury understood the court to mean that plaintiff could recover for the pain and suffering of his wife. And especially is this true in the light of the entire charge, and of the court's full statement therein of the contentions of the parties to the case. This exception discloses no reversible error.

Ground 16 alleges error in this charge: "Plaintiff also sues for the loss of services of his wife. This is also a legitimate item on which damages may be awarded, if the plaintiff is entitled to recover in this case." Movant's contention is that this charge "places recovery for the loss of services as an additional ground, . . instead of stating it as the sole ground. . . Plaintiff had no right to recover for anything but the loss of services of his wife and such doctor's bills and expenses as he would be put to on account of any injury she may have received." The charge is correct, the exception refutes itself, and there is no merit in the ground.

Ground 17 complains of this charge: "When the loss of a wife's services, resulting from personal injuries to her, is to be compensated for, she is not to be treated as an ordinary servant or a

hireling. She sustains to her husband and his household a relation special and peculiar. Her place can not be supplied, and no other person is capable of filling it." It is contended that this charge "emphasized plaintiff's case unduly . . and had a tendency to influence the jury against the defendant." The exception further states: "Movant agrees that what is said in the foregoing instruction is the law, but it is also a splendid argument." The charge is not erroneous for any reason assigned.

Ground 18 complains of this charge: "You can take into consideration, in arriving at the amount, any amount of manual labor his wife performed, and the full value of this manual labor, and then award on this item, if the plaintiff recovers, just such amount as your enlightened consciences may dictate in the light of all the facts and circumstances of the case." It is contended that the foregoing charge is erroneous because it permitted the jury, "after finding the full value of all the manual labor the plaintiff's wife performed, . . to award such amount as its enlightened conscience might dictate in the light of all the facts and circumstances." The excerpt complained of is the concluding sentence of the charge of the court upon the right of the husband to recover for the lost services of his wife. With the exception of this excerpt, the charge is practically in the language of Chief Justice Bleckley in the case of *Metropolitan St. R. Co.* v. *Johnson,* 91 *Ga.* 466 (3), 471 (18 S. E. 816). For instance, this excerpt is immediately preceded by this language: "Some wives perform manual labor; others do not. The actual facts and circumstances in each case should guide the jury in estimating for themselves in the light of their own observation and experience, and to the satisfaction of their own consciences, the amount which would fairly and justly compensate the husband for this loss, if he is otherwise entitled to recover." In *Western & Atlantic R. Co.* v. *Jarrett,* 22 *Ga. App.* 313 (2) (96 S. E. 17), it was said: "In estimating the value of ordinary domestic service rendered by a wife, the jury are authorized to take into consideration what may be the value of many services incapable of exact proof, but measured in the light of their own observation and experience. 'Some wives perform manual labor—others do not; yet the husbands of the latter no less than those of the former would certainly be entitled to compensation from wrongdoers for causing inability to perform service . . There need be no direct or

express evidence of the value of the wife's services, either by the day, week, month, or any other period of time, or of any aggregate sum.'" See also *Standard Oil Co.* v. *Reagan,* 15 *Ga. App.* 571 (9), 599 (84 S. E. 69). We do not commend the phraseology of the excerpt, but since the wife's labor was expended in looking after three young children and performing other household duties, the value of which was incapable of exact computation, we decline to hold that the charge discloses reversible error.

In regard to the general grounds of the motion for a new trial, we shall only say that there was evidence that the hole containing the water-meter was about a foot in diameter and a foot deep; that it was on a sidewalk of the city about fifteen inches from the street curbing, and between the curbing and that portion of the sidewalk which was regularly used by pedestrians; that the proper cap covering the meter had been broken off, and the city knew of this fact long before Mrs. Christian stepped in the hole; that the piece of old bucket covering the hole had been there for at least two days before Mrs. Christian stepped on it; and that she was injured as alleged. We have carefully read the eighty-eight pages of the brief of evidence, and are satisfied that there is ample evidence to support the verdict, and that there is no merit in the general grounds of the motion for a new trial. See *McFarland* v. *McCaysville,* 39 *Ga. App.* 739 (148 S. E. 421).

The record discloses no reason why the verdict and judgment for $500 should be set aside, and the judge properly overruled the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*