26344. HENDERSON *v.* AMERICAN HAT MFG. CO.

DECIDED NOVEMBER 4, 1937.
ADHERED TO ON REHEARING, DECEMBER 15, 1937.

*Joseph Jacobs, John B. McCallum,* for plaintiff.
*George L. Bell, Noah J. Stone,* for defendant.

BROYLES, C. J. A motion to dismiss the writ of error was made on the grounds: (1) that the bill of exceptions was not tendered to the presiding judge within the time required by law, and (3) that no defendant in error is named in the bill of exceptions. The second ground of the motion was abandoned by counsel for the movant; and it suffices to say that, under the record, there is no merit in the third ground. It is undisputed that the judge signed the bill of exceptions on April 9, 1937, and that April 8, 1937, was the last day provided by law for the tender of the bill of exceptions to the judge. However, the judge made the

following certificate: *"Certificate.* I do hereby certify that the above and foregoing bill of exceptions was presented at my office on April 8, 1937; that at said time I was out of the City of Atlanta and the State of Georgia, and at said time was in the State of Tennessee; that I returned to Atlanta, Fulton County, Georgia, late in the evening of April 8, 1937; that before my departure I instructed A. L. Wallace, a deputy clerk of said court, who acts as my secretary, to receive all papers presented for my signature, to enter thereon the date said paper was presented to him, and that I would sign said papers as of the date so presented to my secretary. I further certify that on April 8, 1937, Mr. Joseph Jacobs, attorney for plaintiff in error, presented the foregoing bill of exceptions at my office to A. L. Wallace, deputy clerk of this court, who noted on the back the date said paper was presented; that upon my return to the office on the morning of April 9th, 1937, said bill of exceptions was presented to me by Mr. Wallace, with the notation of its presentation to him on April 8th; that I immediately signed said bill of exceptions and returned same to counsel for plaintiff in error for service and filing, all of which I had instructed to be done before leaving for Tennessee earlier in the week. I further certify that the foregoing bill of exceptions is true, and specifies all of the evidence and contains all of the record material to a clear understanding of the errors complained of, and the Clerk of the Municipal Court of Atlanta, Fulton Section, is hereby ordered to make out a complete copy of such parts of the record in said case as are in this bill of exceptions specified, and certify the same as such, and cause the same to be transmitted to the Court of Appeals of Georgia, that the errors alleged to have been committed may be considered and corrected. This 9th day of April, 1937. [Signed] T. O. Hathcock, Presiding Judge, Appellate Division, Municipal Court of Atlanta, Fulton Section." This certificate of the presiding judge shows that the bill of exceptions was actually left at his office on April 8, that it was received by a deputy clerk of the court, who was also secretary to the presiding judge, and who was not only authorized but instructed by the presiding judge to receive it for him and in his behalf, and that the judge certified "that the foregoing bill of exceptions is true, and specifies all of the evidence and contains all of the record material to a clear understanding of the errors complained of," etc.

■ The contention of the defendant that the certificate shows that there was a previous certificate which is not attached, to the record, is without merit. The certificate shows that the judge did not return to Atlanta until "late in the evening of April 8, 1937," and he certified to the bill of exceptions upon his "return to the office on the morning of April 9, 1937;" and this certificate is dated April 9, 1937. The certificate is headed *"Certificate,"* and contains the usual statements in an original certificate, and there is nothing in it to indicate definitely that it is a supplemental certificate, or that the judge signed two certificates on the same day to the same bill of exceptions. The third and last paragraph of the certificate is the usual and regular certificate, and the first and second paragraphs thereof explain that it was tendered on the 8th, and show why it is signed on the 9th instead of the 8th. Trial judges frequently certify to bills of exceptions after the final date of tender. The act of 1933 (Ga. L. 1933, p. 293), in reference to the Atlanta municipal court, does not provide that the bill of exceptions shall be *signed* by the judge within a specified time; but provides that' the bill of exceptions shall be *presented* within a specified time. The language of the judge that he immediately "signed," using the past tense instead of the present tense, may be improvidently chosen, but it is not misleading in the light of the certificate as a whole. In any event, this is the only certificate which appears of *record* before this court. See, in this connection, *Minhinnett* v. *State,* 106 *Ga.* 141 (32 S. E. 19) ; *Ga., Fla. & Ala. Ry. Co.* v. *Lasseter,* 122 *Ga.* 679, 684 (51 S. E. 15) ; *Cordray* v. *Savannah Union Station Co.,* 134 *Ga.* 865 (68 S. E. 697) ; *Stilwell* v. *Watkins,* 135 *Ga.* 149 (68 S. E. 1114) ; *Sweat* v. *Barnhill,* 171 *Ga.* 294 (3) (155 S. E. 18) ; *City of East Point* v. *Christian,* 40 *Ga. App.* 633 (1, 4) (151 S. E. 42) ; *Crawford* v. *Cook,* 48 *Ga. App.* 456 (173 S. E. 187). Since this is the only certificate of record before this court, it follows that those cases, cited by the movant, wherein there were two certificates are not applicable to this case. The motion to dismiss the writ of error is denied.

■ The bill of exceptions recites that Mrs. B. C. Henderson filed suit in the municipal court of Atlanta against the American Hat Manufacturing Company Inc., for $182; that the defendant failed to appear on the return day, and a default judgment was taken against it; that the defendant filed a motion, and an amendment

thereto, to set aside the default judgment; that the trial judge, after hearing evidence, set aside the default judgment and ordered that the case be assigned for trial; and on this order the plaintiff assigned error in an appeal to the appellate division of the municipal court of Atlanta; that the appellate division of the municipal court sustained the trial judge; and on this judgment the plaintiff assigns error in her bill of exceptions to this court. Counsel for the defendant company, in his motion to set aside the default judgment, alleged that the suit was returnable to the December term of court, and that when copy of same was received by him he read the same over, and "through inadvertence and negligence" thought the suit was returnable to the January term, and so marked his files. This "is not such excusable neglect as will authorize the judge, in the exercise of the sound discretion vested in him under the statute, to allow the default to be opened." *Ingalls* v. *Lamar*, 115 *Ga.* 296 (41 S. E. 573) ; *Martin* v. *Shields*, 144 *Ga.* 179 (86 S. E. 538) ; *Moore* v. *Kelly & Jones Co.*, 109 *Ga.* 798 (2) (35 S. E. 168) ; *Jackson* v. *Grant*, 152 *Ga.* 751 (111 S. E. 192). The petition, formal parts omitted, alleges in substance that on August 28, 1936, the plaintiff was employed by the defendant company to do the same work she had previously done as a machine operator in a factory, on the same terms, and at the same rate of pay as her former employment, to wit, $22.75 per week; that in accordance with said arrangements she reported for work on Monday, August 31, about 8 a.m., and was assigned to a machine to work; that when she went to her machine she was threatened with physical violence by a group of workers in said plant, who forced her to leave the workroom of the plant to escape injury; that she reported this occurrence to her foreman, and to the vice-president of the defendant company who at that time was in charge of the plant; that the vice-president, being unable or disinclined to afford plaintiff the protection to which she was entitled, told her that it was dangerous for her to stay in the factory or attempt to work, that it would be better for her to leave, that she had been hired in good faith and reported for work in good faith, that she was then on the pay-roll of the company and he would see that she was kept on it, and "that she would get her pay just the same as if she were actually at work." Plaintiff alleges further "that she then, and ever since has been, ready, willing, and capable of per-

forming the work for which she was employed as stated hereinabove;" that she "has received no compensation, although she has demanded the same, and never has been notified that her employment with the defendant was at an end or her services dispensed with;" and that the "defendant owes her eight weeks pay for the period from August 31st through October 24th, 1936, at $22.75 per week, which amounts to $182.00." The record shows that no evidence was introduced by the plaintiff before the judgment of default was entered.

The contention that the amount claimed was unliquidated, and therefore that the plaintiff should have introduced evidence to establish the amount due her, is without merit. This is not a suit for damages because of being discharged in violation of a contract of employment; nor is the suit for unliquidated damages. Unliquidated damages are uncertain in quantity, and can not be made certain except by accord or verdict. 17 C. J. 716 (49). They are such as are not yet reduced to a certainty in respect to amount, nothing more being established than the plaintiff's right to recover; or such as can not be fixed by a mere mathematical calculation from ascertained data in the case. Cox *v.* McLaughlin, 76 Cal. 60, 67 (18 Pac. 100, 9 Am. St. R. 164). This is a suit to recover money alleged to be due to the plaintiff under a definite contract of employment, and the amount due can be definitely and accurately calculated. The plaintiff sues for her wages of $22.75 per week, for eight weeks from August 31 through October 24, which amount to $182. The case of *Putney* v. *Swift, 54 Ga.* 266, relied upon by the defendant company, is differentiated by its facts from the case at bar. In that case "the relation of master and servant did not in fact commerce," and the court held that the employee could not recover his wages, but only the damages which came to him from the breach of the defendant's contract. The instant suit for wages earned presents an entirely different issue. According to the allegations of the petition (by which we are governed, in view of no appearance at the return term by the defendant and a default judgment being entered), the relation of master and servant had commenced when the plaintiff reported for work on Monday, August 31, about 8 a.m., at and in the plant of the defendant company, at the time agreed upon, and was assigned to a certain machine by the defendant company, to which she went

in compliance with the defendant company's orders. This relation of master and servant was never terminated, as the petition shows that plaintiff has "never been notified that her employment with the defendant was at an end, or her services dispensed with." The plaintiff was not obligated to lessen her damages by procuring employment elsewhere, because, according to the petition, she had continuous employment with the defendant; and she was not suing for damages. It was agreed by the vice-president of the defendant company, who was in charge, that the plaintiff "had been hired in good faith and had reported for work in good faith, she was then on the pay-roll of the company, and he would see that she was kept on it, and further that she would get her pay just the same as if she were actually at work." In accordance with this agreement, and at the suggestion of the vice-president of the defendant company, she went home, and remained "ready, willing, and capable of performing the work." In other words, since she was under contract and had been told that she would be kept on the pay-roll and would receive her pay, she kept herself in readiness to respond to her employer's call at any time she was needed; and by holding herself in readiness, in accordance with the arrangement between her and her employer, she was earning her wages and complying with the agreement. Under the existing circumstances, the holding of herself in such readiness was more obligatory than usual in such cases, because the petition shows that the defendant company was having labor trouble at its plant, and consequently it might need the services of the plaintiff at any time.

The petition also shows that the plaintiff was loyally standing by her employer, and acted under and in accordance with her contract in reporting for work, even though it was at a time and place of danger, and that the defendant could not or would not give her the protection to which she was entitled, and that she was still acting under her arrangement with the defendant company when she went home because of the trouble in the defendant's plant. The plaintiff was employed at a definite time (August 28, 1936), at a definite rate of pay ($22.75 per week), was never discharged, and sued for her wages for a definite period (from August 31, 1936, through October 24, 1936), at the rate of pay agreed upon. Under the agreement between the plaintiff and the defendant, and because of labor trouble in the defendant

company's plant, the plaintiff was to leave the plant and "get her pay just the same as if she were actually at work." She left the plant and kept herself "ready, willing, and capable of performing the work;" and when she did this she was acting under the agreement. Such a contract could have been terminated by either party, but, according to the petition, it was not terminated; and the plaintiff had a right to sue for the definite amount of wages alleged to be due her under the contract. As stated in *Brazzeal* v. *Commercial Insurance Co.*, 51 *Ga. App.* 471 (180 S. E. 853), "this was a contract to begin in praesenti, for an indefinite period, terminable at will, and the employee thereunder was suing under the contract for the amount of compensation due." None of the cases cited by the defendant apply to this state of facts. Furthermore, even if the petition were defective, the defects were amendable as a matter of form, and were cured by the judgment rendered. Code, 110-705; *Weems* v. *Kidd*, 37 *Ga. App.* 8 (3) (138 S. E. 863); *Rollins* v. *Personal Finance Co.*, 49 *Ga. App.* 365 (175 S. E. 609); *Smith* v. *Franklin Printing Co.*, 54 *Ga. App.* 385 (187 S. E. 904). The trial judge of the municipal court of Atlanta erred in setting aside the default judgment, and the appellate division of the court erred in affirming the judgment of the trial judge.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*

Note by the Court.—After a rehearing of this case was granted, the original decision of this court was rewritten and elaborated as now presented; but the original judgment is adhered to.