## 29481. SEYMOUR v. CITY OF ELBERTON.

DECIDED APRIL 14, 1942. ADHERED TO ON REHEARING, JUNE 5, 1942.

*J. T. Sisk,* for plaintiff. *Raymonde Stapleton,* for defendant.

GARDNER, J. This case is here on exceptions to the sustaining of a general demurrer to the petition of the plaintiff. The substance of the petition we quote: "That many years ago the defendant excavated upon and as a part of the sidewalk on the east side of South Thomas Street in the City of Elberton, approximately opposite the lines separating the lots on said South Thomas Street, known as numbers 125 and 131, and approximately three hundred (300) feet south of the intersection of Thomas and Church Streets, an opening in the ground approximately 18 inches deep, 20 inches long, and 12 inches wide, and installed therein a certain iron water-meter box as a part of the waterworks system operated by the defendant, and which said excavation and water-meter box are still the property and under the supervision of defendant. That said water-meter box as originally manufactured and as constructed and installed at said location was equipped with an iron lid or cover, which was in turn fitted on the under side with a locking device manipulated by a key through the outer side of said lid or cover,

which said key when turned caused an iron or steel bolt, plunger, or tongue to engage underneath a flange on the edge of said water-meter box, thereby locking the said lid or cover in place; that on the occasion when plaintiff was injured as hereinafter set forth, the said lid or cover was not in place or over said water-meter box and hole, and said water-meter box and hole was open and without any guard or anything else about it to indicate its presence or dangerous condition. That at the time hereinafter set forth the said lid or cover for said water-meter box was not fully equipped with the aforesaid locking device, in that the bolt, plunger, or tongue which was designed to engage the flange of the water-meter box and lock the same in place had been broken off, lost, or removed from said lid or cover, making it impossible to lock or fasten the same in place, and that said part of said locking device had been absent from said lid or cover for such a period of time and that all parts of said locking device were very rusty and showed that they had not been in use for a long period of time, and for a sufficient length of time for the officers, employees, and agents of the defendant to have ascertained said condition by the exercise of ordinary care. That the said cover or lid for said water-meter box was lying near-by said box, but not on, upon, or over the same. Plaintiff further shows that no water had been distributed by the defendant from or through said water-meter box for several years next preceding the date of her injury and that said water-meter box was not in use at the time she suffered her injuries herein complained of." The subsequent paragraphs allege in substance that there was a small street light located near the meter box; that plaintiff was walking on the street about 8:30 p. m., stepped into the open water-meter box and sustained injuries.

The petition alleges the following acts of negligence on the part of the municipality: In having permitted the street light located near said water-meter box and hole to be unlighted at the time plaintiff was injured as aforesaid. In permitting said water-meter box and hole to remain in said sidewalk after the same had been abandoned for use. In not having repaired and kept in repair the lid or cover of said water-meter box so that the same could be locked or securely fastened. In not having said lid or cover of said water-meter box securely locked or fastened at the time plaintiff was injured. In not having inspected said water-meter box and

the lid or cover thereof and in failing to discover the defective condition of said lid or cover of said water-meter box. In not filling up the hole or excavation in said water-meter box, so that in the event the lid or cover thereof was removed or displaced it would leave no hole or excavation into which a pedestrian could step or plunge. In not having the lid or cover of said water-meter box so locked, fastened, and secured that it could not be removed from said water-meter box.

The general demurrer alleges: "Defendant demurs generally to plaintiff's petition as same sets forth no cause of action. . . Defendant demurs generally to plaintiff's petition as same nowhere shows that the top to the water-meter box or the box itself were defective in such a way as to amount to negligence on the part of the defendant; and same does not allege that the top was left off of said box by any agent or employee of the city, nor that the city or any of its officials or employees had knowledge that said top was off of said box, nor that same had been off a sufficient length of time to put defendant on notice that it had been removed."

The plaintiff does not base her cause of action on the fact that the lid or cover was off the water-meter box and that defendant had notice thereof. This is not the negligence on which the petition is based, and is not set out as an act of negligence. The acts of negligence on which the petition is based preceded in point of time the removal of the lid or cover from the water-meter box. The bases of the acts of negligence complained of are: (1) That the lid or cover of the water-meter box was originally designed with a slot-locking device, which had become dismantled so that this locking device was inoperative, and that this defective condition of the top was known to the municipality, or should have been known by the exercise of ordinary care; that the locking device showed evidence of having rusted and become unserviceable, and that the municipality was negligent in not having said locking device repaired so that it could be securely fastened over the top of the meter-box, and in not having the lid securing same fastened at the time of plaintiff's injury. (2) That the use of the meter box had been abandoned, and the city was negligent in not filling up the excavation so that should the lid be removed there would be no hole or excavation in which pedestrians could fall. (3) The city was negligent in not keeping the street light burning near the

water-meter box. We will deal with these allegations of negligence in reverse order.

A city or municipality is bound to exercise ordinary care and diligence in keeping its streets and sidewalks in a reasonably safe condition for the use of pedestrians, and whether or not this has been done is generally a jury question under the facts of each case, but where no acts of negligence are alleged sufficient to show a breach of this duty there is of course no jury question presented. We know of no law which requires a city or municipality to safeguard, by electric lights or otherwise, a defective condition in a street or sidewalk of which it has no knowledge, and which it could not have discovered by the exercise of ordinary care and diligence. The allegations of the petition negative this proposition.

Counsel for the plaintiff in error, in his argument, emphatically disclaims any contention that the cause of action is based on the fact that the municipality knew or should have known that the top or cover was off the water-meter box. We do not think the municipality would be held to the accountability to safeguard against any possibility which might arise, and we do not think the allegations of the petition are sufficient to sustain the proposition that the municipality could reasonably anticipate the possibility of the removal of the meter-box top to such an extent that it would have to put safeguards by lighting or otherwise. It would seem that this would incur too extended expense and duty on our municipalities. Such requirements would almost reach the point of requiring the municipalities to become insurers against the removal of its meter-box covers and similar devices.

It is nowhere alleged that the top did not fit into the meter box; that, when fitted on, it was not level with the surface of the ground or street or sidewalk, regardless of the defective condition of the slot-locking device. It is not alleged that any municipal employee removed the cover, or when it was removed that the municipality knew it, or by the exercise of ordinary care and diligence could have known it. It is true that a dangerous place in a street or sidewalk must be safeguarded in some appropriate way by a municipality until it can be fixed, if such dangerous place is known to the municipality, or by the exercise of ordinary care and diligence could be known, but under this petition there is no such dangerous place in the street alleged. There is alleged only the defect in the

slot-locking device of the meter-box cover, therefore *Harrington* v. *Macon*, 125 *Ga.* 58 (4) (54 S. E. 71), *Holliday* v. *Athens*, 10 *Ga. App.* 709 (2) (74 S. E. 67), and *City of East Point* v. *Christian*, 40 *Ga. App.* 633, 638 (151 S. E. 42), are not in point.

■ We come next to consider whether, under the allegations of this petition, the municipality was negligent in permitting the meter box to remain on the sidewalk after it had been abandoned for use. In view of what we have said above, and the allegations of the petition, we fail to comprehend any actionable negligence stated in the petition against the municipality, for if the box was not defective, and if the lid fitted thereon, notwithstanding the defects of the slot-locking device, we know of no rule of law which would require the municipality to remove the box. Aside from this, construing the petition most strongly against the pleader, it nowhere appears that the presence of the meter box on or near the sidewalk, or the condition of the top, was the proximate cause of the injury. The proximate cause of the injury, construing the petition in this light, was the removal of the top from the meter box by a third party, or some other means of which the city had no knowledge and could not have known by the exercise of ordinary care. In so far as the allegations of the petition go, there is no allegation to show that the condition of the meter-box cover was in any way connected with the removal of the top from the box. To sustain a recovery the negligence charged must be the proximate and effective cause of the injury. *Gillespie* v. *Andrews*, 27 *Ga. App.* 509 (108 S. E. 906); *Southern Railway Co.* v. *Barber*, 12 *Ga. App.* 286 (77 S. E. 172); *Hardwick* v. *Figgers*, 26 *Ga. App.* 494 (106 S. E. 738). We call attention to *Andrews & Company* v. *Kinsel*, 114 *Ga.* 390 (40 S. E. 300, 88 Am. St. R. 25), where it was held: "It is unnecessary to argue or to cite authorities to sustain the well-settled legal principle that, to enable one to recover for damage resulting from the negligent conduct of another, it must appear that the negligence of the defendant was the proximate cause of the injury sustained. It is also a well-recognized principle that where there has intervened between the defendant's negligent act and the injury an independent illegal act of a third person producing the injury, and without which it would not have happened, the latter is properly held the proximate cause of the injury, and the defendant is excused." Also see *City of Atlanta* v. *Guice*, 41

*Ga. App.* 146, 156 (152 S. E. 144). In quoting these authorities we do not mean to hold that the municipality was negligent in failing to fill the meter box, but, conceding for the sake of argument that it was, the petition fails to allege actionable negligence in this respect.

We come next to consider whether the allegations in regard to the condition of the slot-locking device of the cover of the meter box set out a cause of action. We do not think so. Again we find ourselves inquiring as to what was the proximate cause of the injury, and we are again obliged to conclude that it was the removal of the top from the meter box. It is argued that, by reason of the top not being securely fastened, it created a condition which would require the municipality to anticipate that some one might remove it and cause an injury such as is alleged. In support of this contention the plaintiff cites *Terrell* v. *Giddings,* 28 *Ga. App.* 697 (112 S. E. 914), *Wallace* v. *Matthewson,* 143 *Ga.* 236 (84 S. E. 450), and *Mills* v. *Central of Ga. Ry. Co.,* 140 *Ga.* 181 (78 S. E. 816, Ann. Cas. 1914C, 1098). These decisions, as well as *Mayor &c. of Unadilla* v. *Felder,* 145 *Ga.* 440 (89 S. E. 423), dealt with the maintenance of dangerous agencies. We are not prepared to hold that the absence of a slot-locking device on a water-meter box is negligence on the part of a municipality, or the maintenance of a dangerous agency, where this is the only defect alleged as to the serviceability and safety of the meter box and its cover. In all the cases we have been able to find where municipalities have been held liable for injuries resulting from defects in meter boxes near and on the sidewalks, it is where they were defective in that they protruded above the ground, or would move or give way, or the tops did not rest securely on the rims of the boxes, or there was some other defective installation or maintenance, and such was the proximate cause of the injury. See *City of Rome* v. *Gordon,* 53 *Ga. App.* 536 (186 S. E. 439); *Davis* v. *Rome,* 37 *Ga. App.* 762 (142 S. E. 171).

We do not think the petition alleged a cause of action. The court did not err in sustaining the general demurrer.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

### ON REHEARING

GARDNER, J. On rehearing counsel for plaintiff in error is apparently so earnestly sincere in his statement that the original opinion wrongly applies the facts of this case to the admittedly

correct principles of law announced in the headnotes that we feel it may be of some value to the profession to cite authorities in elaboration of the principles announced in the original opinion.

In Bird v. St. Paul Fire Ins. Co., 224 N. Y. 47 (120 N. E. 86, 13 A. L. R. 875), Judge Cardozo said: "The wrongdoer may be charged with those consequences and those only within the range of prudent foresight." In Fowlkes v. Southern Ry. Co., 96 Va. 742, 745 (32 S. E. 464), the court held: "Even if an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote." In Milwaukee & St. Paul R. Co. v. Kellogg, 94 U. S. 469, 474 (24 L. ed. 256), the court said: "But it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." 22 R. C. L. 124: "It has been held in many cases that a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience. The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again. The possible consequences are those which happen so infrequently that they are not expected to happen again. A man's responsibility for his negligence must end somewhere. As has been well said: 'One is bound to anticipate and provide against what usually happens and what is likely to happen; *but it would impose too heavy a responsibility* to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable.' " (Italics ours.) In 82 A. L. R. 392 we find this statement: "The substance of it all, stated and restated in various ways, is that negligence carries with it liability for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable. One is not charged with foreseeing that which could not be

expected to happen." In *Kleinberg* v. *Lyons, 39 Ga. App.* 774 (148 S. E. 535), this court held: "The intervening agency actually causing the injury was not such as the defendant could reasonably have anticipated or foreseen. This being true, the intervening agency must be taken to constitute the proximate cause of the plaintiff's injury. See *Andrews* v. *Kinsel, 114 Ga.* 390 (2), 392 (40 S. E. 300, 88 Am. St. R. 25)." See *Georgia Power Co.* v. *Kinard, 47 Ga. App.* 483, 486 (170 S. E. 688): "The liability of the defendant is limited to those consequences which it should reasonably have anticipated as the natural and probable result of its own act or omission. *Mayor &c. of Macon* v. *Dykes, 103 Ga.* 847, 848 (31 S. E. 443); *Ga. Power Co.* v. *Wood, 43 Ga. App.* 542, 545 (159 S. E. 729); *Rome Ry. &c. Co.* v. *Robinson, 35 Ga. App.* 521 (134 S. E. 132); *Higginbotham* v. *Rome Ry. &c. Co., 23 Ga. App.* 753 (99 S. E. 638); 20 C. J. 367-371; Griffin *v.* Jackson Light &c. Co., 128 Mich. 653 (87 N. W. 888; 55 L. R. A. 318, notes; 92 Am. St. R. 496)." The petition must allege sufficient facts to show that as a matter of law the acts complained of were the proximate cause of the injury. *Powell* v. *Waters, 55 Ga. App.* 307 (190 S. E. 615), gives the following rule: "In order to hold the defendant liable the petition must show either that the act complained of was the sole occasion of the injury, or that it put in operation other causal forces, such as were the direct, natural, and probable consequences of the original act, or that the intervening agency could have reasonably been anticipated or foreseen by the original wrongdoer." This case is authority for the proposition that, "The proximate cause of an injury is ordinarily a question for the jury. But where it appears from the undisputed facts that the act or negligence complained of is not the efficient proximate cause of the injury, then the question is properly one for determination by the court." Also, the same authority states the following: "It was said, in Milwaukee & St. Paul Railway Co. *v.* Kellogg, 94 U. S. 469, 475' (24 L. ed. 256): 'The question always is: was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?'"

In *Gallovitch* v. *Ellis, 55 Ga. App.* 780 (191 S. E. 384), we find

this rule: "Where it appears from a petition that the negligence alleged against the defendant was not the proximate and effective cause of the alleged injury, a demurrer to such petition should be sustained." See also *Cain* v. *State, 55 Ga. App.* 376, 381 (190 S. E. 371) : "If in a given case the injury complained of did not flow naturally and directly from the wrongful act or omission attributed to the defendant, or could not reasonably have been expected to result therefrom, or would not have resulted therefrom but for the interposition of some independent, unforeseen cause, the defendant's such antecedent wrongful act or omission would not be the proximate cause of the injury complained of." See *Gillespie* v. *Andrews, 27 Ga. App.* 509, supra: "While the determination of questions of negligence lies peculiarly within the province of the jury, and in the exercise of this function the question as to what constitutes the proximate cause of the injury complained of may be directly involved as one of the essential elements and disputed issues in the ascertainment of what negligence, as well as whose negligence, the injury is properly attributable to; and while it is also true that the mere fact that the injury would not and could not have resulted by reason of the defendant's acts alone will not of itself be taken to limit and define the intervening agency as constituting the proximate cause (*Rollestone* v. *Cassirer, 3 Ga. App.* 161, 173, 59 S. E. 442; *Ga. Ry. & Power Co.* v. *Ryan, 24 Ga. App.* 288, 100 S. E. 713), yet a demurrer to a petition should be sustained where it appears from the plaintiff's pleading that the negligence charged against the defendant was not the proximate and effective cause of the injury. *Southern Ry. Co.* v. *Barber,* 12 *Ga. App.* 286 (77 S. E. 172)." In *Shaw* v. *Macon, 6 Ga. App.* 306 (64 S. E. 1102) : "The allegations of the petition clearly showing that the negligence charged against the defendant was not the main, controlling, preponderating, or proximate cause of his injury, the court did right in sustaining a demurrer and dismissing the petition." For a well-considered opinion dealing with this question from a different state of facts see *Stallings* v. *Ga. Power Co.,* post, 436.

In the light of the authorities cited we are confirmed that the original opinion is correct. To follow the reasoning of able counsel for plaintiff in error to its ultimate conclusion would require this court to hold that municipalities should be required to design

covers of water-meter boxes so as to insure their nonremoval, or else place guards or lights about them. This we are unauthorized to do.

*Judgment adhered to. Broyles, C. J., and MacIntyre, J., concur.*