THE MAYOR AND COUNCIL OF JACKSON *v.* BOONE.

1. It was competent for a medical expert to testify that, in his opinion, a given disease "may be cured by a surgical operation, but it is very rarely the case that this can be done," though the witness further testified he had no experience in treating that disease, but derived all his knowledge on the subject from reading medical authorities.

2. Where, in consequence of the falling in of a gate forming a part of a railing protecting an excavation in and along the margin of a public sidewalk in a town, the excavation being used to afford access to a private cellar, the plaintiff was precipitated into the excavation and injured, there was no error in declining to charge the jury that if the plaintiff intentionally leaned upon the gate, he could not recover from the municipal corporation; or in instructing the jury that it was a question for them whether or not, under all the circumstances, the plaintiff was making a proper and legitimate use of the gate in question.

3. It appearing by undisputed evidence that, at the instance of the municipal authorities, the gate had been made secure two days before the plaintiff was injured, and that it was safe on the evening before the injury occurred; and there being no evidence tending to show that these authorities had ascertained, or by ordinary care might have ascertained, that it had become insecure at the time of the injury, the plaintiff was not entitled to a verdict against the municipal corporation, and it was error to refuse a new trial.

April 2, 1894. Argued at the last term.

Action for damages. Before Judge HUNT. Butts superior court. March term, 1893.

W. W. ANDERSON, for plaintiff in error. HALL & HAMMOND, WRIGHT & BECK and J. S. BOYNTON, *contra.*

LUMPKIN, Justice.

1. One ground of the motion for a new trial assigned error upon admitting in evidence the testimony of a practicing physician, "that the disease of varicocele may be cured by a surgical operation, but it is very rarely

the case that this can be done," the physician further stating that he had never had any medical experience in treating this disease, and derived all the knowledge he had upon the subject from reading medical authorities. Taking as a whole the testimony of the witness as it appears in the brief of evidence, it amounted simply to a statement by him that, in his opinion, the disease in question could, in rare instances only, be cured by a surgical operation, and that this opinion was based entirely upon his reading medical works recognized as authorities. We think the evidence was properly received. The opinion of an expert as to what conclusions may be properly drawn from statements in scientific works pertaining to his profession, amounts to something more than mere hearsay, and may be very valuable in elucidating a given scientific inquiry. An opinion thus formed and given to the jury is quite a different thing from reading to them mere extracts from the books themselves. The latter might not be intelligible to the non-professional mind, while the opinion of an expert, expressed in language adapted to their comprehension, might be easily understood by the jury, and is, moreover, not only the result of study and deliberation, but an exercise by the witness himself of his own trained mental faculties upon the question involved.

The doctrine is thus broadly stated in Lawson on Expert and Opinion Evidence, pages 176, 177: "An expert may testify to an opinion of his own derived from books"; and the authorities there cited seem to sustain the text. We find the following pertinent note at the bottom of the latter page: "Said Dr. Crell, on the trial of Spencer Cowper, in answer to an objection by the court: 'My Lord, it must be by reading, as well as a man's own experience, that will make any one a physician, for without the reading of books in the art, the art itself cannot be attained to. I humbly conceive that

in such a difficult case as this, we ought to have a great deference for the reports and opinions of learned men; neither do I see any reason why I should not quote the fathers of my profession in this case, as well as you gentlemen of the long robe quote Coke upon Littleton in yours'; and upon this answer the doctor was permitted to proceed with the quotation. Beck's Med. Juris. 918, 919, and notes." See, also, as somewhat pertinent, *Central Railroad* v. *Mitchell,* 63 *Ga.* 173.

2. An excavation which had been made in and along the margin of a public sidewalk in the town of Jackson, for the purpose of affording access to a private cellar, was protected by a railing of which a gate formed a part. The plaintiff leaned upon this gate; it gave way; he, in consequence, fell into the cellar, and was seriously injured. The defendant's counsel requested the court to charge the jury, that if the plaintiff intentionally leaned on the gate, he was not entitled to recover anything from the town of Jackson for the injury thereby sustained. The court refused to give this charge, but on the contrary, instructed the jury, in substance, that it was a question for them whether or not, under all the circumstances, the plaintiff was making a proper and legitimate use of the gate in question. We think the court was right in refusing the request and in charging as stated. Under our system, the question of negligence is generally one for the jury. We cannot accept, as the correct law of the case at bar, the doctrine laid down in the case of Stickney *v.* City of Salem, 3 Allen, 374, relied on by counsel for the plaintiff in error, that: "A town is not liable in damages to one who, while stopping in the highway for the purpose of conversation, leans against a defective railing and is injured by reason of its insufficiency." Under the facts of that case, the question whether or not the plaintiff's injury resulted from his own negligence might well have been left to

the jury. "A person standing on the street, or leaning on a bridge railing, is not precluded by so doing from insisting that the municipality has neglected to exercise reasonable care to keep its highways in a fit condition for use." Jones on Negl. Municipal Corp. §90. In our southern clime, it is almost "human nature" for a pedestrian passing leisurely along the sidewalks of a town or city, and stopping casually to engage in conversation with a friend or acquaintance, to sit or lean upon whatever may happen to be convenient for the purpose. We do not, of course, mean to assert that in so doing a person may, in any given instance, be observing that degree of care and diligence with reference to his own safety which it would be reasonable and proper to expect of him under the circumstances. A distinction is to be drawn between objects which seem to invite a passer-by to sit upon or lean against them, and such as, from their nature or position relatively to the street, would negative the idea that they could with convenience or safety be used for any other purpose than that for which they were specially designed. A neat, smooth, substantial water-plug, for instance, at a corner where a weary traveler was waiting for a belated car, would very naturally suggest the idea of taking a seat; while a pedestrian, however weary, would hardly feel any natural impulse or temptation to lean against a barbed-wire fence. The illustration is homely, but serves to express our meaning. The law recognizes the natural instincts and impulses of children, and holds a person strictly accountable for the consequences resulting from placing tempting, though dangerous, agencies within their reach. Man has been said to be "a child of but an older growth"; certain it is that to a great measure he is controlled by impulse and natural inclinations; and in passing upon his conduct in any given instance, the laws of nature governing human action cannot properly be entirely overlooked.

The better and safer rule is to allow each case to be decided on its own merits, and to permit the jury to determine whether or not, in any particular instance, the plaintiff observed the proper degree of prudence. As the present case is to be tried again, we express no opinion upon its merits.

3. The undisputed evidence shows that the municipal authorities of Jackson had, only two days before the plaintiff was injured, required and caused one Watkins, the owner of the premises in front of which the excavation existed, to have the gate made perfectly secure, and that it was in a safe condition on the evening before the injury occurred. How it became insecure, the evidence fails to disclose, but a reasonable inference would be that the fastenings attached to the gate by Watkins had been removed by some thoughtless or mischievous person. There was no evidence whatever tending to show that the municipal authorities had ascertained, or by ordinary care might have ascertained before the injury, that the gate had again become insecure. It is undoubtedly the duty of municipal corporations to exercise reasonable care over sidewalks, and the law also imposes upon them the duty of reasonable inspection to guard against danger that should be expected. Cellarways constructed for the purpose of descending from sidewalks to the basements of buildings, are necessities in a city or town; but the corporation should not allow them to become traps for pedestrians. Sidewalks should be kept reasonably safe, and openings in the same should be guarded; but whether or not defects in the means provided for guarding them will make the municipality liable, is usually a question of fact to be determined with reference to the surrounding circumstances. An impracticable or unreasonable amount of inspection should not be required of the corporation, but only such as prudence, good sense and reason make necessary.

Jones on Negl. Municipal Corp. §94–5, and cases cited. Where a defect which might lead to danger exists in a cellar-way opening upon a sidewalk, it is the duty of the municipal authorities to ascertain this defect and have it remedied, but a reasonable time should be allowed for this purpose. If the defect had been in existence for only a short time, and the agents or officers of the city had no knowledge of it, or a sufficient length of time had not elapsed so that they ought to have known of it in the exercise of ordinary care and diligence, the corporation should not be held liable for an injury resulting because of the defect This, in substance, was decided in *Lewis* v. *City of Atlanta*, 77 *Ga.* 756.

In view of the undisputed facts disclosed by the record in this case, the plaintiff was not entitled to recover. The only fair conclusion from the evidence as a whole is, that the municipal authorities exercised the proper diligence in having the gate made secure, and it does not appear that there was any negligence on the part of the "city fathers," after the gate again became insecure, in failing to ascertain that fact. We think a new trial should be had, and we grant it the more readily because it also appears that the plaintiff had, only a short time before the injury, been plainly and distinctly warned by Watkins not to lean upon this gate, but, either forgetting or disregarding the warning, persisted in so doing.

*Judgment reversed.*