37028. YARBROUGH *et al. v.* CANTEX MANUFACTURING COMPANY.

DECIDED FEBRUARY 25, 1958—REHEARING DENIED APRIL 4, 1958.

*Pittman, Kinney & Pope, A. Mims Wilkinson, Jr.,* for plaintiffs in error.

*Hugh M. Dorsey, Jr., A. J. Henderson, Jones, Williams, Dorsey & Kane,* contra.

NICHOLS, Judge. 1. The plaintiffs were seeking to recover from the defendant corporation damages resulting from loss by fire of their store building and its contents resulting from a fire

which spread from the defendants' place of business to their place of business which was located next door. The plaintiffs' action was not based on the negligence of the defendant corporation in permitting the fire to start, but on the contrary, was based on the alleged negligence of the defendant which resulted in the fire spreading to the plaintiffs' store, since it was positively alleged that the origin of the fire was not known.

It was alleged that the fire started on the defendant's premises and spread to the plaintiffs' premises, that such fire started under a loading platform at the rear of the defendant's place of business, that above the ramp, or loading platform under which the fire started there was located an intake ventilation fan, which was in operation at the time the fire started and which forced fresh air into the defendant's building, and at the front of the building, on the same floor, there was an exhaust fan exhausting air out of the defendant's building, so that a forced draft was created throughout the first or street floor of said building. "By reason of the said forced draft completely through said mill, when the flames from the fire, and the intense heat therefrom, ignited the wooden structure under which they originated, consisting of the loading platform and ramp, the said flames and the intense heat therefrom were carried by said intake fan into the interior of said mill and the entire interior of the first or street floor thereof was enveloped in flames as a result of said forced draft throughout said floor. Said fan did not have automatic cut-offs in case of fire, but continued to operate until the fire had engulfed the entire main floor and had involved the entire mill building." In connection with the above allegations, the following allegations of negligence were contained in the plaintiffs' petition: "o, In failing to have automatic cut-offs on said ventilation fans described . . . and the other ventilation fans in said building, which would stop said fans in the event of a fire in said building." The defendant demurred to such allegation of negligence as follows: "The defendant demurs specially to subparagraph 'o' . . . on the ground that the allegation that this defendant was negligent in failing to have automatic cut-offs on the ventilating fans referred to therein, is a mere conclusion of the pleader contrary to law and to fact for the reason that the defendant was under no legal duty to equip such

fans with any such automatic cut-offs, and for the further reason that the alleged failure of this defendant so to do was in any event too remote a contributing cause of said fire to have been anticipated or foreseen by the defendant in the exercise of ordinary care, and said allegations are irrelevant and immaterial and prejudicial to the defendant." The above demurrer was sustained, and it is to this judgment that the plaintiffs except.

In *Peggy Ann of Georgia* v. *Scoggins*, 86 *Ga. App.* 109, 116 (71 S. E. 2d 89), Judge Worrill went into the law very thoroughly as to what negligence a defendant may be charged with, and it may be summed up in the following language quoted by Judge Worrill: "One is bound to anticipate and provide against what usually happens and what is likely to happen; *but it would impose too heavy a responsibility* to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable." See also *Whitaker* v. *Jones, McDougald, Smith, Pew Co.,* 69 *Ga. App.* 711 (26 S. E. 2d 545) and citations.

In the present case there was no allegation that the defendant corporation was required by law to have "automatic cut-offs" on such fans, nor can this court take judicial notice that exhaust fans are, or are not, equipped with such cut-offs by ordinarily prudent persons, although it may take judicial notice that large numbers of "exhaust" and "intake" fans are in use throughout the State.

Therefore the question here resolves itself to a question of whether under the allegations of the plaintiffs' petition the defendant corporation could be held to have expected that a fire would start in such position in the building, or outside the building and be drawn into the building, when the intake and exhaust fans were on and that the fans would cause a "forced draft" through the building so as to aid the spread of the fire to the plaintiffs' building next door.

In *Beckham* v. *Seaboard Air-Line Ry.*, 127 *Ga.* 550, 555 (56 S. E. 638, 12 L. R. A. (NS) 476), where a fire was started in a wooden house owned by the railroad, not because of any negligence on the part of the railroad, and spread to contiguous property, it was held under the circumstances of that case that the railroad was not liable for the spread of the fire, "even if

under some circumstances the owner [occupier] of a building in flames not caused by his negligence or positive act may owe some sort of diligence to prevent the spread of the fire to contiguous property."

In the present case no contention is made in reference to the allegation of negligence with regard to the failure of the defendant to have "automatic cut-offs" on the fans that this was a negligent act *after* the fire started, but on the contrary it is insisted that the defendant should have, under the circumstances, anticipated that a fire would get started and that the failure of the defendant to have "automatic cut-offs" on the fans would result in the spread of the fire. Had it been alleged that the defendant was required by some local statute or ordinance to have such fans equipped with "automatic cut-offs" in case of fire or that ordinarily prudent persons who had such fans so equipped them, then the allegation of negligence would possibly have presented a jury question; however, here, where no such duty was alleged and no allegations made that the fire was started by the defendant, the alleged failure of the defendant to have his fans so equipped was too remote to become a part of the plaintiffs' cause of action, and the trial court did not err in sustaining the defendant's demurrer to such allegation of negligence.

2. On the trial of the case the plaintiff sought to introduce in evidence a *report* of investigation of the fire made by two engineers of the Southern Underwriters Association which, according to the testimony of H. N. Pye, chief engineer of such association, was made in the regular course of business. It is contended that under Code (Ann.) § 38-711 the *report* should have been admitted and the evidential value left to the jury.

In *Knudsen* v. *Duffee-Freeman, Inc.,* 95 *Ga. App.* 872 (99 S. E. 2d 370), Judge Quillian went into the question very thoroughly as to what *records* are admissible under such Code section, and without quoting this well reasoned opinion it must be said that the *report* offered in evidence in the present case was not a *record* contemplated by such Code section but was the opinion of the persons making the report and was based, at least to some extent, on what was reported to them by unidentified persons, and under the decision in the case of *Knudsen* v. *Duffee-Freeman, Inc.,* supra, was not admissible in evidence.

3. The defendant's motion for nonsuit was granted at the conclusion of the plaintiffs' evidence and the plaintiffs except to such judgment.

" 'When a court passes upon a motion for a nonsuit it decides only one question, that is, do the allegation and the proof correspond? In sustaining such a motion the court does not hold that the plaintiff is not entitled, under the law, to recover on the facts alleged; neither does the overruling of the motion decide that the plaintiff is entitled under the law to recover. The right to recover under the facts alleged is not involved in the decision of such a motion. If a plaintiff "proves his case as laid," he is entitled to prevail as against a nonsuit; but it by no means follows from this that he is entitled to recover on the facts "as laid." ' *Kelly* v. *Strouse,* 116 *Ga.* 872, 883 (43 S. E. 280)." *Gray* v. *Schlapp,* 92 *Ga. App.* 261 (1) (88 S. E. 2d 536) and citations.

No question is presented as to whether the plaintiffs are, as a matter of law, entitled to recover, but merely whether there was any evidence adduced to support the allegations of the petition.

It might be well to note at this point, merely as a matter of interest, that the defendant's general demurrers to the petition were overruled and no exception taken to that judgment and therefore it became the law of the case that the plaintiffs' petition set forth a cause of action, but see *Talmadge* v. *Central of Ga. Ry. Co.,* 125 *Ga.* 400 (54 S. E. 128), and *Beckham* v. *Seaboard Air-Line Ry.,* 127 *Ga.* 550, supra.

The evidence adduced on the trial of the case showed that the defendant operated its place of business (mill) in the location alleged in the plaintiffs' petition, and although it was alleged that the defendant was negligent in operating its mill *under the conditions alleged,* before this could amount to negligence to prevent a nonsuit it must be shown that the mill was otherwise negligently operated, since the mere operation of the mill in a lawful manner was not alleged as negligence. The specification of negligence was the operation of the mill *under the conditions alleged to be negligence.* Accordingly, the other specifications of negligence, and the evidence adduced in connection therewith must be looked to in order to determine if the trial court erred in granting the defendant's motion for nonsuit.

There was no evidence that the defendant corporation was guilty of any act *after* the fire started which caused such fire to spread to the plaintiffs' property, and the allegations of negligence relate to the condition of the defendant's premises prior to the fire. The plaintiffs presented evidence to the effect that there was a liquid on the floor of the mill which might have been oil, but they also presented evidence that such liquid was water caused by one of the processes used by the mill in the manufacture of corduroy. They also presented evidence that fumes from fuel oil were smelled near the rear of the building, where the fire started, but then evidence was presented that on the morning of the fire no fuel oil was on the ground as alleged, and while there was some evidence that a certain amount of lint accumulated in the mill, there was evidence that the defendants completely cleaned the mill weekly, had blowers to take the lint from the machines which caused the majority of the lint, and swept the mill regularly to keep the lint from accumulating in the mill.

A careful consideration of the evidence adduced by the plaintiff on the trial of the case, which consists of some 54 pages, demands a finding that the plaintiffs did not prove their case as laid. Therefore, the trial court did not err in granting the motion for nonsuit.

*Judgment affirmed. Felton, C. J., and Quillian, J., concur.*