22000.   ISLEY v. LITTLE et al.

ARGUED APRIL 8, 1963—DECIDED MAY 9, 1963—
REHEARING DENIED May 29, 1963.

*Hicks & Howard,* for plaintiff in error.

*Reed, Ingram & Flournoy,* contra.

HEAD, Presiding Justice. The petitioners sought to enjoin the construction of an automobile racing enterprise, commonly known as a "drag strip." It was held by this court in *Isley v. Little,* 217 Ga. 586 (124 SE2d 80), that the petition as amended stated a cause of action. On the trial of the case the jury returned a verdict for the petitioners. The bill of exceptions in the present case assigns error on the overruling of certain grounds of special demurrer, the denial of a motion for judgment notwithstanding the verdict, and the denial of the motion for new trial, as amended.

■ Paragraph 23 of the petition alleged that small children living in the neighborhood of the "drag strip" will be attracted by it and it will be a demoralizing influence upon them. This allegation was subject to the ground of demurrer that it is speculative and conjectural. *Pittard v. Summerour,* 181 Ga. 349, 350 (182 SE 20).

Paragraph 17 of the petition alleged that the construction and maintenance of the "drag strip" by the defendant would deprive the petitioners of the full use and enjoyment of their properties and would amount to an unlawful use or taking of their property by the defendant without due process of law, in violation of the due process clauses of the State and Federal Constitutions. This paragraph is subject to the ground of special demurrer that it "sets forth an unwarranted conclusion of law."

■ The defendant demurred specially to paragraphs 6 and 7 of the petition on the ground that the allegations therein are conclusions of the pleader. In the decision of this court on the former appearance of the case some of the allegations in these paragraphs are referred to in listing the elements comprising the nuisance alleged. Since a cause of action can not be shown by allegations which are conclusions of the pleader, *Washington Seminary, Inc. v. Bass,* 192 Ga. 808 (2) (16 SE2d 565), this was necessarily a ruling that these allegations are not conclusions, but are allegations of ultimate facts. While there are allegations in paragraph 6 in regard to persons congregating at the "drag strip" for illegal and immoral purposes, which allegations are

not based on facts on which the conclusions could properly be based, the demurrer attacks the paragraph as a whole, and since a portion of the paragraph is not subject to the demurrer, we will not hold that the trial judge erred in overruling it.

Paragraphs 8, 9, 10, 15, 16, and 28 of the petition are not subject to the objections raised that they are conclusions of the pleader or contain matter not germane to the issue. Paragraphs 19, 20, and 22 are not subject to the objections that they are speculative, remote, and conjectural. The other special demurrers were abandoned by the defendant.

■ It is strongly urged by the defendant that the trial judge erred in overruling the general grounds of the motion for new trial and denying his motion for judgment notwithstanding the verdict. It is pointed out that this court on the previous appearance of the case stated that the allegations of the petition assert that the "drag strip" is being constructed in "an exclusively residential area." It is contended that the evidence shows that none of the residences are in the immediate vicinity of the proposed "drag strip," and that the proposed enterprise would not be in an exclusively residential area.

The petition in several instances referred to the area as a "residential area," and it was alleged that the area upon which the "drag strip" was being constructed "was formerly in the unincorporated area of Cobb County, Georgia, where zoning laws are operative and required the area involved to be used exclusively for residential purposes." The opinion on the former appearance of the case referred to these allegations in the following language: "Where, as here, the petitioners allege that the 'drag strip' is being constructed in an exclusively residential area, formerly zoned for residential purposes by the county governing authority before being taken into the city limits of Powder Springs, which has no zoning regulations, and in the immediate vicinity of the homes of several of the petitioners," etc. *Isley v. Little*, 217 Ga. 586, supra.

While the evidence shows that the area surrounding the "drag strip" under construction is not thickly populated, and there are a few industrial plants in the general area, we can not say that there was no evidence from which the jury was authorized to

find that the area immediately surrounding the "drag strip" property is residential. The witness James H. Pritchett, a real estate appraiser, testified: "There are now in the area some industrial houses; there is a scattering of commercial facilities, but the area is predominantly a residential area. *In the immediate vicinity of the drag strip that location is all residential.* [Italics ours.] I did view the homes in that area; I saw in that vicinity between 80 and 100 homes in the area; I could look down the street and see some in the immediate area; I believe I saw in excess of 100 houses, new houses, and a few, quite a few there, maybe 10 or 15 or 20 years old, but the greatest majority of them have been built in the past ten years. In a two-mile radius of this proposed drag strip, I estimate and I am sure I said, within a two-mile radius there of that strip I would think there was a little in excess of 100 houses; that would be an approximation of them."

The verdict was not without evidence to support it, and the trial judge did not err in overruling the general grounds of the motion for new trial, and denying the motion for judgment notwithstanding the verdict.

■ In ground 4 of the amendment to the motion for new trial it is stated that Captain Eugene Thomas, educational officer of the Georgia State Patrol, was asked the question: "As the educational officer, patrol officer, of the Georgia State Patrol, have you formed any opinions as to the benefits or detriments to be derived from drag strips for safety on the highways of the State of Georgia?" Counsel for the defendant made the following objection: "We object to that question for the reason that it is irrelevant and immaterial and would shed no light on the issue involved in this case, it being a nuisance case for injunction, and the issue is not involved here as to methods and his opinion; we object to this evidence. He has asked him if he has formulated any opinion in regard to the safety of drag racing on the highways and the effects of it. We say what is done on the highways is irrelevant and immaterial so far as this case is concerned. This case is about drag racing on a professionally engineered strip and there would be no comparison whatsoever with the safety of humans on the strip built for that purpose, where there is no

other traffic around, and on the highway, and we object to it for that reason. I don't see where the highways would have anything to do with this nuisance case." The objection was overruled and the witness was allowed to answer: "Yes, sir, I have, from my observation of how drag strips do affect the highways. Well, we have observed that the influences of the drag strip definitely go back to the highway." The witness further stated: "We do find that the ones who participate in drag races are the worst type drivers on the highways." Objection was made to this statement on the ground that it was a conclusion of the witness, prejudicial to the defendant, and had no bearing whatsoever on the issue being tried.

The issue being tried was whether or not the "drag strip" in the process of construction, in the area in which it was being constructed, would become a nuisance in the manner in which it would be operated. The testimony of this witness related to the question of whether it was to the public interest to allow the operation of a "drag strip" at any place in the State. It is not contended by the petitioners that a "drag strip" is a nuisance per se. This testimony was prejudicial to the defendant, and was not germane to the issue. It was erroneous to allow it in evidence.

■ In ground 5 error is assigned on further testimony of the witness Captain Thomas in the same connection as that shown in ground 4. The witness was asked in what way the influence of the "drag strip" was detrimental to the highway, and the witness replied: "Well, I will say this, that one of the things that influences people to drive is the fact that they can open up their motors without mufflers as they roar past, and speed goes with it." The objections to this testimony were that: the witness was testifying as to what another person is thinking; it was a conclusion, irrelevant, and immaterial; and it shed no light on the issue before the court.

While this witness had qualified as an expert witness on traffic safety, he was not authorized to testify as to the motives of other drivers, and this testimony was not germane to the issue on trial.

■ In ground 6 it is asserted that Captain Thomas was asked the following question:, "Have you as an education officer—stated

what relationship that has to establishing the policy of the State Patrol?" Counsel for the defendant objected to the question on the ground that it would be a conclusion of the witness as to what policies the State Patrol has. Over this objection the witness was allowed to state that it was the general opinion of the State Patrol that "drag strips" are detrimental and most dangerous to the driving public.

This witness was Supervisor of the State Education Division with the Department of Public Safety, and he testified that he prepared educational policies for the State Patrol. His testimony in regard to the general educational policies of the State Patrol was not subject to the objection that it was a conclusion of the witness.

■ In ground 7 error is assigned on the admission in evidence of the testimony of Captain Thomas that: "What we contend is that the same driving influence that they have on the drag strip comes back on the streets and highways and stays with them." The objection made was: "We object to that as not being responsive to the question asked, and it is irrelevant, immaterial and a conclusion of the witness, as to who they are, they don't say, and we don't know." The trial judge asked: "Is that your opinion of the drivers on the highway?" The witness replied in the affirmative, and the objection was overruled.

An objection to evidence on the ground that it is immaterial and irrelevant is too general to present a question for consideration by this court. *Middleton v. Waters*, 205 Ga. 847 (4) (55 SE2d 359); *Greyhound Corporation v. Clough*, 211 Ga. 574 (2) (87 SE2d 387). The testimony was not inadmissible for any reason urged in the objection.

■ In ground 8 it is stated that the witness Charles L. Hardy (who testified that he operated a "drag strip") was asked the question: "In the operation of the drag strip and knowing the noise with that thing would you consider the area in and around a drag strip to be desirable for residential purposes?" Counsel for the defendant stated: "We object to that question, that is the ultimate purpose of the jury." The answer given was: "I don't know whether I would want to be next to it or not; being in the drag racing business it wouldn't bother me, but as to some

people you might say it would. I have been around drag strips other than the one I operate. I would say I have been around a dozen."

This witness did not attempt to answer the question for ultimate decision by the jury, and the admission of this testimony was not harmful to the defendant.

■ It is stated in ground 9 that the witness Hardy was permitted to testify that he had some trouble with the drinking of intoxicating beverages around the "drag strip" which he operated. The objection to the question asked him was: "It is irrelevant, immaterial and not germane to the issues in this case. This drag strip isn't even in existence, and what might happen at some other one is still a conclusion so far as this one is concerned."

"Mere anticipation of injury amounting to a nuisance apprehended to ensue from the conduct of a lawful business in an improper manner will not authorize the grant of an injunction; . . ." *Barton v. Rogers,* 166 Ga. 802 (3) (144 SE 248). This testimony by the witness Hardy should have been excluded.

■ In ground 10 error is assigned on a statement as to the contentions of the petitioners made by the trial judge while ruling upon the objection to the evidence referred to in Division 9, which, it is asserted, was an incorrect statement of what the petition actually alleged. The only objection made at the time of the statement of the trial judge was, "We object to that, . . ."

No valid objection being made to the remark of the trial judge, and no motion for mistrial being made, this ground shows no reversible error. *Moore v. McAfee,* 151 Ga. 270 (11) (106 SE 274); *Tinnerman v. Baldwin,* 211 Ga. 532 (2) (87 SE2d 65).

■ In ground 11 it is asserted that it was erroneous to admit the testimony of Ernest C. Logan, one of the petitioners, in regard to the noises he had observed in attending several "drag strip" races. This evidence was objected to on the ground that what occurred at some other "drag strip" would be irrelevant and immaterial in so far as the "drag strip" sought to be enjoined is concerned, which has not been built. This testimony was in regard to the usual and ordinary noises accompanying a "drag strip" race, and it was admissible to show the noises that might be expected from the "drag strip" under construction by the defendant.

■ Ernest C. Logan, one of the petitioners, testified that his mother has a very serious heart condition, and is affected by loud noises. In ground 12 it is asserted that this evidence should not have been admitted over the objection that the petitioner's mother is not a party to the case, and the witness is not a medical expert. The testimony was not subject to the objections urged against it.

■ Logan was allowed to testify as to his future plans to build several residences, over the objection, as shown in ground 13, that this testimony was speculative and an opinion.

The question for determination by the jury was whether the "drag strip" under construction by the defendant would be a nuisance in a residential area, and evidence as to the future plans of the petitioners to build residences was subject to the objection that it was speculative. *Gate City Terminal Co. v. Thrower*, 136 Ga. 456, 471 (71 SE 903).

■ In ground 14 error is assigned on the refusal to exclude the testimony of Glenn G. Brooks, Jr., one of the petitioners, that with a "drag strip" at this location he would not develop his property for a home. The defendant moved to exclude the testimony on the ground: "There is no proof that there is any residence located on this property, and, therefore, it would not be a nuisance by reason of the location." This statement was insufficient as a valid objection.

■ In ground 15 it is stated that Lamar Little, the husband of one of the petitioners, was allowed to testify in regard to a proposed plan for a subdivision submitted to the F. H. A. concerning the property owned by his wife. This testimony was subject to the objection of the defendant that it was irrelevant and not germane to the issue, in that the petition alleged that the "drag strip" would be a nuisance in a residential area, whereas this evidence was attempting to prove that property in the area would be residential in the future when developed as a subdivision.

■ In ground 16 error is assigned on testimony which was admitted over the sole objection that it was "prejudicial." If testimony is otherwise relevant and admissible, it is not subject to the limited objection that it is "prejudicial." This objection is too incomplete to require any ruling.

■ In ground 17 error is assigned on allowing counsel for the petitioners to ask a witness for the defendant if he had talked to a juror about the case, to which the witness replied that he had talked to him for a few minutes. Great latitude is allowed in the cross-examination of a witness, and it was not error to allow counsel to elicit this testimony.

■ In grounds 18 and 19 it is shown that during the cross-examination of A. J. Bryere, a witness for the defendant, counsel for the petitioners, over the objection of the defendant that it was hearsay and prejudicial, read a number of excerpts from an article criticizing "drag strips" appearing in the May 12, 1962, issue of the magazine "Saturday Evening Post." The reading of these excerpts to the witness was under the guise of asking him if he agreed with the statements made in the article. The excerpts in very graphic language express the opinion of the writer that "drag strips" teach the worst possible type of driving to both participants and spectators, who put their lessons into practice on the crowded highways.

"Books of science and art are not admissible in evidence to prove the opinions of experts announced therein." *Johnston v. Richmond & Danville R. Co.*, 95 Ga. 685 (2) (22 SE 694); *Cook v. Coffey*, 103 Ga. 384 (30 SE 27); *Boswell v. State*, 114 Ga. 40, 43 (39 SE 897); *Flemister v. Central Georgia Power Co.*, 140 Ga. 511, 515 (5) (79 SE 148). Certainly an article appearing in a magazine could not be admitted in evidence to prove the opinions of the writer, although he might be an expert in the field in which he wrote.

The witness to whom the excerpts were read had not qualified as an expert on "drag strips." He is a Methodist preacher and stated that he had attended a "drag race" on the request of the defendant in order to observe it and form his conclusions of it. Since the witness was not an expert witness, and the article was not shown to be a standard treatise, it was not permissible to cross-examine him on it on the theory that an expert witness might be cross-examined by reference to a standard treatise in the field of his special knowledge to test his credibility. *State Hwy. Dept. v. Willis*, 106 Ga. App. 821, 824 (128 SE2d 351). The reading of the excerpts from the article does not appear to

have been for any valid purpose of cross-examination of the witness. It was, in effect, presenting to the jury the views of a person not sworn as a witness in the case and not subject to cross-examination, and thus was subject to the objection that it was hearsay.

■ In ground 20 it is asserted that it was error to allow the introduction in evidence of a written exhibit of the petitioners, over the objection that it was "self-serving." The exhibit was an application to the F. H. A. by L. W. Little in regard to a subdivision development on property of his wife, one of the petitioners in the case. Representations and statements in such an application, in so far as they might induce or authorize an inference favorable to the petitioners, would be subject to the objection urged. *Southern R. Co. v. Allison*, 115 Ga. 635 (3) (42 SE 15). The application was not germane to the issues involved, as pointed out in Division 15, and it was not admissible for any purpose.

■ In ground 21 error is assigned on that portion of the charge of the court giving the definition of public and private nuisances as defined in *Code* § 72-102. The judge fully charged on the type of nuisance involved in the present case, and it was not error to give these general definitions prior to the instructions specifically adjusted to the issues in the case.

■ In ground 22 error is assigned on an excerpt from the charge of the court in regard to the erection of a nuisance, because the court referred to the elements of a nuisance "in relation to the homes and residences of the plaintiffs," instead of in relation to an "exclusive"(ly?) residential area. This charge was not erroneous as given. The contention that the judge should have charged that in order for the "drag strip" under construction to be enjoined as a nuisance, it must be shown that it would be a nuisance because of being in a residential area, can not be made by an exception to a charge which is not erroneous within itself.

■ In ground 23 error is assigned on an excerpt from the charge of the court as follows: "The mere anticipation of injury from the operation of a lawful business in a *proper* manner would not authorize the grant of an injunction." (Italics ours.) The principle of law which the trial judge apparently intended

to state was that the mere anticipation of injury from the operation of a lawful business in an *improper* manner would not authorize the grant of an injunction. *Barton v. Rogers,* 166 Ga. 802 (3), supra. We can not say that this incorrect statement was harmless error.

■ Objection is made in ground 24 to the following excerpt from the charge: "It is not sufficient if it be simply offensive to delicate and sensitive organizations." The judge in his charge clearly and repeatedly announced the principle that "the inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man." *Code* § 72-101. The inapt use of the word "organization" in this particular excerpt should not have been misleading to the jury.

*Judgment affirmed in part; reversed in part. All the Justices concur.*