## 67008. BARNEY v. MORRIS et al.

QUILLIAN, Presiding Judge.

Plaintiff, Samuel Barney, entered into an oral agreement with Lawton Morris, d/b/a Baxley Creosoting Company (Baxley), to cut and sell timber to Baxley. Baxley was to purchase a "timber jack" and a truck and turn them over to Barney to use in cutting and harvesting timber to be sold to Baxley. Baxley was to deduct $200 per week for payment of the timber jack, and $35 per week for payment of the truck, from payment for all loads of timber delivered to Baxley by Barney until the truck and timber jack were paid for.

Morris testified that the agreement was entered into in 1977 and he purchased the timber jack, a type of tractor used to get into difficult areas to bring timber out, for $21,887.50. The bank figured out the amount of interest for three years would put the total cost at $26,726.40. The truck cost was $3,678.64. Morris only wanted timber which could be used for posts and poles. It was permissible for Barney to cut and sell pulpwood to other people. Morris said that the payments of $200 for the timber jack and $35 for the truck were "predicated upon him producing timber for that week." If he didn't produce any timber, he did not have to make a payment. But, "if he produced timber for somebody — if he used the equipment, he was to pay me . . ." Morris had no complaints about 1977 and 1978 when deliveries of posts and poles were made by Barney and some payments were made. Defendant's exhibits show 26 payments were made on the timber jack in 1977. Sixteen payments were made in 1978. Four payments were made in 1979 and none were made in 1980. Defendant's exhibits reveal that payments were made on the truck in 1977 nineteen times, 1978 fourteen times, 1979 twelve times and six times in 1980. Morris' son explained that Barney made many deliveries of timber to Baxley but the amounts were so small and Barney had a crew of three to pay that they failed to deduct any amount for payment on the timber jack or truck. Morris became dissatisfied with Barney's performance in 1979 when he found out that Barney was cutting wood for other people and not delivering posts and poles to him. After no payments were made on the timber jack in 1980 and Morris was aware that the equipment was being used by Barney to cut timber for other persons, Morris repossessed the timber jack and truck in November and sold the truck to another person who was producing timber for him. He kept the timber jack in his possession.

Barney testified that he produced as much timber as he could but Morris "culled" out most of the posts and poles he brought him, saying they were too crooked. He admitted he had used the

equipment to cut pulpwood for other people, but he actively looked for posts which could be used by Morris. The timber jack broke down and he asked Morris to help repair it but he refused. He had the equipment repaired on credit and then Morris repossessed it while he was on a job for Union Camp. He admitted that he probably cut wood for Bob Sears, Union Camp, Vidalia Wood Yard, Dr. Johnson and Pierce Timber Company in 1979 and 1980. Barney's son stated that before the timber jack was repossessed they were averaging around $700 to $800 per week. After Morris repossessed the equipment they made between $200 to $250 per week. Morris introduced evidence that Sears Timber Company paid $20,694 to Barney's son in 1980 for timber. Barney admitted that his crew was made up of himself, his son, and his son-in-law. Barney brought this action for damages, alleging that he had performed all the conditions of the agreement and defendant had breached the same. The jury found for the defendant. Plaintiff brings this appeal. *Held:*

1. Plaintiff argues that the trial court erred "in not submitting the loss of plaintiff's equity in the Timberjack as an issue of damages to the jury." We find the jury was adequately and correctly instructed on the issue of damages. Plaintiff did not request a charge on damages that included the loss of his equity in the timber jack, nor did he object to the charge of the court as to an omission to charge on the loss of equity in the collateral. All objections to the charge by the plaintiff were corrected by the trial court by giving a recharge. Following the recharge plaintiff stated he had no exceptions. "A party may not complain of the giving or failure to give an instruction to the jury, unless he objects thereto before the jury returns its verdict, stating distinctly his objection and the grounds of his objection." *Hunter v. Batton,* 160 Ga. App. 849 (1) (288 SE2d 244). We find this enumeration to be without merit.

2. It is contended that the failure of the court to grant plaintiff "statutory damages as a matter of law upon concluding that Defendant has failed to comply with OCGA § 11-9-504 and § 11-9-505 [Code Ann. §§ 109A-9—504, 109A-9—505]" was error. We do not agree. We should note at this point that this action is not one by a secured party to recover a deficiency judgment. This is an action by a debtor for damages caused by repossession of collateral after an alleged breach of the oral agreement between the debtor and the secured party. Morris testified that he reserved title to the equipment in Baxley until Barney paid for the equipment. This is a "purchase money security interest." OCGA § 11-9-107 (Code Ann. § 109A-9—107). The secured party had the right to take possession of the collateral after default. OCGA § 11-9-503 (Code Ann. § 109A-9—503). And, after default the secured party could sell, lease,

or otherwise dispose of the collateral in a commercially reasonable manner. OCGA § 11-9-504 (1) (Code Ann. § 109A-9—504). Where the secured party is in possession of the collateral after default, it may propose to retain the collateral in satisfaction of the obligation. OCGA § 11-9-505 (2) (Code Ann. § 109A-9—505). However, unless the debtor has renounced or modified his rights, after default, written notice must be given to the debtor of an intended sale and that the secured party intends to retain possession of the collateral. OCGA §§ 11-9-504 (3), 11-9-505 (2) (Code Ann. §§ 109A-9—504, 109A-9—505). No notice was given the debtor of the retention of the timber jack or of the sale of the truck.

In *Farmers Bank &c. v. Hubbard,* 247 Ga. 431, 434 (276 SE2d 622), the Supreme Court held that a creditor who fails to comply with the provisions of the UCC as to repossessed collateral is met with two results for noncompliance: (1) it will be presumed that the value of the repossessed collateral equals the amount of the debt, and (2) even if the secured party overcomes such presumption, any recovery is subject to an offset of damages proved by the debtor resulting from the violation.

The trial court charged the jury that the plaintiff became in default of the oral agreement between the parties and because of the default that Morris repossessed the equipment. Barney's contentions were not that Morris could not repossess the equipment — only that Morris sold the truck without notice to him and retained the timber jack without notice to him. Barney alleges such acts caused him to be damaged by loss of profits. The court further charged that the debtor has a right to recover from the secured party any loss caused by his failure to comply with the provisions of the UCC. See *Thurmond v. Elliott Finance Co.,* 141 Ga. App. 574, 576 (234 SE2d 153); *Georgia Central Credit Union v. Coleman,* 155 Ga. App. 547 (2) (271 SE2d 681). The jury found for the defendant.

It is evident that any loss of income suffered by Barney would have to be caused by the repossession and loss of the equipment which had been used to harvest the timber to be sold as pulpwood, posts, and poles. No damage can be attributed to the sale of the truck or the retention of the timber jack by Morris because Barney had no right to their possession after his default. Such violations by Baxley only raise the presumption that the value of the collateral equals the amount due on the debt. *Farmers Bank &c. v. Hubbard,* 247 Ga. 431, supra. This allegation of error is also without merit.

3. The verdict is not without evidence to support it.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED OCTOBER 14, 1983.

■■■ ■■■■■

*Clarence L. Martin,* for appellant.
*T. Peyton Miles,* for appellees.