### 68926. JACKSON v. RODRIQUEZ et al.
(325 SE2d 857)

Carley, Judge.

Appellant slipped and fell while on the job, and thereafter he began experiencing pain in his left side. His employer sent him to the Corporate Center Clinic for an examination. On the day after he was injured, appellant was examined at the clinic by appellee Dr. Combs. During the course of the examination, appellant informed Dr. Combs that he had an ulcer and that he could not take aspirin because it irritated his stomach. Dr. Combs made a notation on appellant's medical record that appellant had a history of ulcer problems.

Dr. Combs determined that appellant was suffering from a muscle strain. He gave appellant two kinds of medication, Parafon Forte and Motrin, and he told appellant to go back to work. Appellant returned to the clinic the next day, complaining that his back pain continued and that the medication was irritating his stomach and his ulcer. Because of appellant's stomach irritation, Dr. Combs discontinued the Motrin he had given appellant and substituted Tylenol with codeine instead.

On the following day and again a few days later, appellant returned to the clinic for his third and fourth visits, respectively. On those occasions, appellant was examined by appellee Dr. Rodriquez. Appellant told Dr. Rodriquez that he was still suffering from back pain. There was evidence that Dr. Rodriquez was also informed of appellant's continuing stomach pain, although the physician denied that appellant complained of stomach problems on his third and fourth visits. In any event, on appellant's third visit to the clinic, Dr. Rodriquez prescribed acetominophen for him, and on the fourth visit, Dr. Rodriquez prescribed Prednisone, Kenalog (intramuscularly), and Darvon Compound-65, which contains approximately 60 percent aspirin.

Appellant's wife administered the medications as prescribed. Four days later, appellant experienced severe stomach pains and was taken by ambulance to a hospital. Emergency surgery was performed and appellant was found to have been suffering from a perforated duodenal ulcer.

Appellant subsequently instituted this medical malpractice action against appellees, alleging that they negligently prescribed medications which caused him to develop a ruptured ulcer. The physicians denied the material allegations of the complaint and, following discovery, the case proceeded to trial. Appellant appeals from the judgment entered on the jury verdict in favor of appellees.

1. The trial court did not err in denying appellant's motion for a new trial on the general grounds. Appellees' expert witness opined that there was no clear corollary between aspirin and ulceration, that low doses of aspirin should not cause stomach problems, that even high doses of aspirin should not cause duodenal (as opposed to gastric) ulceration, that, in all probability, the medications prescribed by appellees did not cause the perforated ulcer, and that the treatment rendered by appellees and the care they exercised was in compliance with that degree of skill and care employed by the medical profession generally. Additionally, another expert testified that the care rendered to appellant was in compliance with that degree of skill and care employed by the medical profession generally under similar conditions and circumstances. This evidence was sufficient to support the verdict of the jury. "It is, of course, of no moment that the evidence

would also have authorized a verdict in some amount for the plaintiff. The jury weighed the evidence and made its choice. That was its duty and its function." *Daniels v. Hartley*, 120 Ga. App. 294, 295 (170 SE2d 315) (1969).

2. Appellant contends that the trial court erred by charging the jury on four occasions that physicians are presumed to be skillful. We recognize that it is error to repeat again and again a portion of a charge which is more favorable to one party than the other. *Simms v. Floyd*, 65 Ga. 719, 720 (3) (1880). "But mere repetition of a principle of law, while unnecessary, will not work a reversal unless it appears from the charge as a whole that there was such undue emphasis as to result in an unfair statement of the law in relation to the [complaining party's] rights. [Cits.]" *Baker v. State*, 88 Ga. App. 894, 895 (78 SE2d 357) (1953). Thus, "to determine whether the error is prejudicial so as to result in reversal, the whole charge must be examined. [Cit.]" *Moore v. Green*, 129 Ga. App. 268, 269 (2) (199 SE2d 317) (1973).

Upon an examination of the charge in its entirety, we find that appellant was not prejudiced by the repetition of the court's instruction concerning the presumption of a physician's skill. The court's lengthy charge covers 19 pages of the transcript. Other than the initial charge concerning the presumption, all of the charges were coupled with a more complete charge explaining how the presumption could be overcome by the plaintiff. In fact, two of the court's charges in this regard mirror an instruction specifically requested by appellant. "Although it would have been better not to repeat these rules of law, we do not believe [appellant] could have been prejudiced thereby." *Moore v. Green*, supra at 269 (2).

3. Appellant enumerates as error the trial court's instruction to the jury "that the law recognizes that medicine is an inexact science at best, and all that a doctor may do is assist it in accordance with the state [of] medical experience existing at the time of the treatment." This language appears in *Hayes v. Brown*, 108 Ga. App. 360, 363 (133 SE2d 102) (1963).

In the case of *Blount v. Moore*, 159 Ga. App. 80, 83 (282 SE2d 720) (1981), this court held: "Absent a qualification as to the necessity that a doctor exercise the care and skill ordinarily employed by the profession generally, we are therefore compelled to conclude that the verbatim language of the second sentence of the second paragraph of Division 1 of [*Hayes v. Brown*, supra] is not adaptable as a jury instruction and *should not be included in a charge in a malpractice case because it is argumentative, inappropriate and misleading.*" (Emphasis supplied.) *Blount v. Moore* was a whole court case in which five judges (one of whom dissented because he thought the charge was *reversible* error) agreed that the instruction is improper

and should not be given. The reasoning of *Blount* is sound, and we decline to overrule it. Accordingly, the challenged instruction was erroneous in the instant case. See also *Hawkins v. Greenberg*, 159 Ga. App. 302, 309-310 (283 SE2d 301) (1981). However, the giving of the improper charge does not require reversal, because appellant failed to voice an objection to it prior to the return of the jury verdict. OCGA § 5-5-24 (a). " 'A party may not complain of the giving or failure to give an instruction to the jury, unless he objects thereto before the jury returns its verdict, stating distinctly his objection and the grounds of his objection.' [Cit.]" *Barney v. Morris*, 168 Ga. App. 426, 427 (309 SE2d 420) (1983).

4. Appellant also contends the trial court erred by charging the jury in terms of whether or not appellees were "guilty" of negligence. The word "guilty" appears three times in the court's charge. "Use by the trial court of the term 'guilty' in referring to [appellees'] alleged culpability for malpractice did not constitute reversible error. While it is *clearly* the better practice not to make use of the word in the context of a civil action, 'guilty' is not necessarily restricted to criminal culpability. See Black's Law Dictionary (4th Ed.) p. 836. We cannot say, therefore, that use of the term was so confusing or misleading as to constitute error." *Blount v. Moore*, supra at 83 (3).

5. The trial court instructed the jury that "a person is not bound to foresee and guard against incidents which are not reasonably to be expected or which would not occur except under exceptional circumstances . . . . [I]f you find from all the evidence that the incident described in this case came about as a result of exceptional circumstances which could not be reasonably foreseen or expected by the defendants, then the defendants cannot be held responsible for the occurrence." Appellant asserts that this charge erroneously misled the jury because it was not adjusted to the evidence.

" 'It has been held in many cases that a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience. The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they must be expected to happen again. The possible consequences are those which happen so infrequently that they are not expected to happen again. A man's responsibility for his negligence must end somewhere. As has been well said: "One is bound to anticipate and provide against what usually happens and what is likely to happen; *but it would impose too heavy a responsibility* to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable." ' " *Seymour v. City of Elberton*, 67 Ga. App. 426, 432 (20 SE2d 767) (1942). Accord *Peggy Ann of Ga., Inc. v. Scoggins*, 86 Ga. App. 109, 116 (71 SE2d 89) (1952); *Yarbrough v. Cantex*

*Mfg. Co.*, 97 Ga. App. 438, 440 (103 SE2d 138) (1958).

In the case at bar, medical experts testified that there may be no direct medical link between aspirin and ulceration, that even high doses of aspirin should not have caused appellant's duodenal distress, and that the medications prescribed by appellees probably did not cause appellant's ulcer to rupture. In view of this evidence, we find that the trial court's charge on foreseeability was adjusted to the facts of the case.

6. In his next enumeration of error, appellant asserts that the trial court erred in permitting appellee Dr. Combs to testify about the results of a study set forth in the *Physician's Desk Reference*. Generally, " '[b]ooks of science and art are not admissible in evidence to prove the opinions of experts announced therein.' [Cits.]" *Isley v. Little*, 219 Ga. 23, 31 (18) (131 SE2d 623) (1963). In the instant case, however, the challenged evidence was merely cumulative of Dr. Combs' earlier testimony about the study results, which had been received without objection. Since substantially similar evidence had already been admitted without objection, any error in admitting Dr. Combs' subsequent testimony was harmless. *South v. South Fulton Hosp.*, 162 Ga. App. 581, 582 (2) (292 SE2d 90) (1982); *Hyles v. Cockrill*, 169 Ga. App. 132, 135 (5) (312 SE2d 124) (1983). See also *Gaskins v. McCranie Timber Co.*, 225 Ga. 280, 283 (168 SE2d 311) (1969).

7. Appellant enumerates as error the failure of the trial court to give three of his requested charges to the jury. The principles embodied in those requested charges were adequately included in the trial court's general instructions. Accordingly, the failure to give the charges exactly as requested was not error. *Blackwell v. Cantrell*, 169 Ga. App. 795, 796 (4) (315 SE2d 29) (1984); *Hyles v. Cockrill*, supra at 137 (9).

8. There was no error in the giving of appellees' requested charges concerning hindsight and differences in medical judgment. The charges embodied correct statements of law and were adjusted to the evidence in the case. *Lockard v. Davis*, 169 Ga. App. 208, 209-210 (2) (312 SE2d 194) (1983); *Butler v. Anderson*, 163 Ga. App. 547 (3) (295 SE2d 216) (1982); *Morse v. MARTA*, 161 Ga. App. 405 (288 SE2d 275) (1982).

9. The trial court did not err when it re-charged the jury on the law of negligence in response to the jury's request. The re-charge was not argumentative, confusing or misleading. See *Brooks v. Cellin Mfg. Co.*, 165 Ga. App. 375, 376 (2) (299 SE2d 888) (1983), rev'd on other grounds, 251 Ga. 395 (306 SE2d 657) (1983); *Andrews v. Lovell*, 145 Ga. App. 246 (1) (243 SE2d 666) (1978).

*Judgment affirmed. McMurray, C. J., Banke, P. J., Pope, Benham, and Beasley, JJ., concur. Deen, P. J., Birdsong, P. J., and Sognier, J., concur specially.*

Decided December 5, 1984 —
Rehearing denied December 20, 1984 —

J. Matthew Dwyer, Jr., Beryl H. Weiner, Thomas C. Dempsey, for appellant.

Philip C. Henry, Robert D. Ingram, for appellees.

Deen, Presiding Judge, concurring specially.

(a) Some exception should be advanced to Division 3 of the majority opinion, which relies upon Blount v. Moore, 159 Ga. App. 80 (1) (282 SE2d 720) (1981), and Hawkins v. Greenberg, 159 Ga. App. 302, 309-310 (283 SE2d 301) (1981). Just as medicine in large part remains an inexact science, the law on the propriety of instructing the jury on such likewise appears somewhat less than exact to both judges and lawyers, considering the number of reversals in cases dealing with this matter. In Blount v. Moore, supra, four judges concluded that the "inexact science" charge is erroneous and inappropriate; however, inclusion of the charge, it was held, will not be reversible error if it is accompanied by an instruction that a doctor must exercise the care and skill ordinarily employed by that profession generally. One judge, in dissenting, actually considered the "inexact science" charge alone to be reversible error. Three judges, the writer included, did not disapprove of the jury charge under the facts of that case. One judge concurred in the judgment only.

It is still this writer's belief that the "inexact science" charge should not be categorically "disapproved" in all situations. Some areas of medicine are more nearly exact than others, and in cases involving these areas the "inexact science" charge should be omitted. In cases involving most other areas of medicine, use of the charge would be proper. If the "inexact science" charge has been disapproved, as indicated in the majority opinion of the case sub judice, the disapproval was effected by only a coalition of the four judges and the dissenting judge in Blount v. Moore, supra. I do not believe that this coalition constituted a uniform majority necessary for such a purpose. Actually, the only thing any five judges did agree upon was a judgment which affirmed the trial court even though the "inexact science" charge was given.

Because there was no real majority in Blount v. Moore, supra, and Hawkins v. Greenberg, supra, was only a two-judge opinion, neither case has any precedential value. The opportunity thus remains for this court to follow the most sensible approach; that is, simply determine whether the "inexact science" charge is authorized by the evidence (as did the three specially concurring judges in Blount v. Moore, supra). If, however, my assessment of the status of Blount v.

*Moore* is incorrect, that case and its progeny should be overruled.

(b) In Division 6, the majority opinion correctly states that books of science and art are not admissible in evidence to prove the opinions of experts announced therein. *Isley v. Little*, 219 Ga. 23, 31 (18) (131 SE2d 623). An expert, however, may testify about opinions of his own derived from books. "But, notwithstanding the inadmissibility of the books, the opinions contained therein may come to the jury through the mouth of an expert witness." *Boswell v. State*, 114 Ga. 40, 43 (39 SE 897) (1901). "It was competent for a medical expert to testify that, in his opinion, a given disease 'may be cured by a surgical operation, but it is very rarely the case that this can be done,' though the witness further testified he had no experience in treating that disease, but derived all his knowledge on the subject from reading medical authorities." *Mayor of Jackson v. Boone*, 93 Ga. 662 (1) (20 SE 46) (1894). "We find the following pertinent note at the bottom of the latter page: 'Said Dr. Crell, on the trial of Spencer Cowper, in answer to an objection by the court: 'My Lord, it must be by reading, as well as a man's own experience, that will make any one a physician, for without the reading of books in the art, the art itself cannot be attained to. I humbly conceive that in such a difficult case as this, we ought to have a great deference for the reports and opinions of learned men; neither do I see any reason why I should not quote the fathers of my profession in this case, as well as you gentlemen of the long robe quote Coke upon Littleton in yours'; and upon this answer the doctor was permitted to proceed with the quotation." Id. at 663. " 'Scientific men are permitted to give their opinions as experts, because given under oath, but the books which they write containing them are, for the want of such oath, excluded.' " *Johnston v. Richmond & Danville R. Co.*, 95 Ga. 685, 688 (22 SE 694) (1895). Nevertheless, a fine line is drawn as a witness' opinion "must be his own and he cannot act as a mere conduit for the opinions of others." *Hyles v. Cockrill*, 169 Ga. App. 132, 134 (312 SE2d 124) (1983). In other words, an expert may give his own opinion as to opinions or facts contained in a scientific text but may not expound or relay only opinions of others found in books without giving his own.

The rule is different in other states. Alabama, Massachusetts, and other jurisdictions allow introduction into evidence of scientific treatises to prove the truth of the statements therein. "Because of the dependability and disinterestedness of authoritative published works, the Alabama view is generally approved by the commentators. The objection to the effect that science is shifting is *based on exaggeration* and to the extent that it is true simply presents a parallel to the disagreement of experts testifying in person." (Emphasis supplied.) Green, Ga. Law of Evid. (2nd ed.), § 325, p. 506. See also McCormick on Evid., § 321; Morgan, Basic Problems of Evid., 319; 6 Wigmore,

Evid., § 1690.

A trial judge, in determining the verifiable certainty of a particular scientific technique or procedure, may view, study, or read "treatises," among other considerations, *Harper v. State*, 249 Ga. 519, 525 (292 SE2d 389) (1982); and an appellate judge, Justice Lumpkin, in *Smith v. State*, 23 Ga. 297, 305 (1857), utilized a medical treatise, Dr. Gooch's Lectures on Midwifery, on his own motion, as a fund of general knowledge or a recounting of common knowledge, as opposed to a source of evidence, with which to weigh the sufficiency of the credible evidence in determination of the medical issue involving "the law of constitutional orgasm or the excitation of sexual passion" where incestuous bastardy was decided.

Under the cited authority, the trial court properly allowed Dr. Combs to point out in the treatise where the pertinent study was located and, likewise, allowed him to be tested on his knowledge as to the text upon which his opinion had been partly based.

The trial court should be affirmed.

SOGNIER, Judge, concurring specially.

While I agree with the results reached in this case and much of what is said, I remain of the opinion that *Blount v. Moore*, 159 Ga. App. 80 (282 SE2d 270) (1981) wherein it disapproves the charge taken from *Hayes v. Brown*, 108 Ga. App. 360, 363 (133 SE2d 102) (1963) should be overruled. For a more full discussion, I refer to my special concurrence in *Blount*.

I am authorized to state that Presiding Judge Birdsong joins in this special concurrence.